Syllabus.

JANE SPURLOCK AND OTHERS v. H. H. SULLIVAN AND ANOTHER.

1. It must appear by the transcript that objections to testimony were taken in the court below, or they will not be considered by this court.
2. B. S. sold a negro belonging jointly to himself, his mother, brother, and sister, and with the proceeds bought a tract of land and took the title thereto in his own name, and for several years occupied the land to their exclusion. *Held*, that though he took the legal title in his name alone, he was the owner of but a fourth interest in the land, and held the other three-fourths in trust for his mother, brother, and sister; and that his individual interest is liable to them for the value of the use and occupation of their three-fourths to their exclusion, and his assignee with notice of their rights is liable to them in like manner.
3. A creditor who has taken a mortgage on property to secure his pre-existing demand is not entitled to the protection accorded to a *bona fide* purchaser for a valuable consideration; and therefore his mortgage cannot supplant prior equities of third parties, though he had no notice of such equities when he took his mortgage.
4. S. bought land with the joint funds of himself, his mother, brother, and sister, but took the title in his own name alone. Subsequently, he offered to pay his individual creditor by a sale or a lease of the land, or to secure him by a mortgage upon it. The creditor took a mortgage, and afterwards explained to a third person that he preferred the mortgage because he feared the title was not clear and that other parties would claim an interest in the land. The creditor was intimate with S. and his mother, brother, and sister, and it does not appear that any persons besides them claimed any interest in the land. *Held*, that these and similar facts sufficiently demonstrate that the creditor, when he took the mortgage, had notice of the rights and interest of the mother, brother, and sister of S. in the land; and therefore his mortgage is subject to their rights and equities.

APPEAL from McLennan. Tried below before the Hon. J. W. Oliver.

The opinion of the court gives a lucid statement of the material facts of the case.

*N. W. Battle*, for the appellants.

*F. H. Sleeper* and *E. A. McKenney*, for the appellee.

Ogden, J. In 1868, this suit was instituted in the District Court by H. H. Sullivan, against Bethel Spurlock, upon a certain promissory note for eleven hundred and fifty dollars, dated in 1866, and to foreclose a mortgage given upon a tract of land, to secure the payment of the note. The appellants intervened, and claimed an equitable interest in the mortgaged land, and in their petition of intervention they alleged that the land was purchased by Bethel Spurlock, for the common benefit of the intervenors and said Bethel and Drury Spurlock, and that though he took the deed for the land in his own name, yet he paid for the same with the proceeds of the sale of a certain negro woman, who was the joint property of the intervenors and said Bethel and Drury Spurlock, and that by reason of said purchase, and the payment of the proceeds of the sale of said negro, they became the equitable owners with the said Drury Spurlock, of an undivided three-fourths interests in said land, and the said Bethel Spurlock held the legal title to the same, in trust for the intervenors and said Drury Spurlock; and that afterward the said Drury Spurlock assigned and transferred his interest in and to the same to one of the intervenors.

The intervenors further claim that in 1865, Bethel Spurlock forcibly evicted them from the land, and that he, by himself, his tenants and assigns, have since held possession of the land, using, occupying, and renting the same for his own benefit; and they pray for a judgment against the said Bethel Spurlock, for the reasonable value of the rent of said land, or so much thereof as they may be entitled to, since 1865; and that the said one-fourth interest of said Bethel be subjected to the payment of the same.

It is further alleged that at the time of taking the mortgage from said Bethel Spurlock, said Sullivan well knew the superior and prior equities and rights of the intervenors, and that therefore the mortgage, so far as their interest is concerned, is null and void; and they pray that the same be canceled and held for naught, so far as the same conflicts with their rights.

On the trial a jury was waived, and the cause submitted to

the court, to be determined on the law and the facts of the case. A judgment was rendered for the plaintiff for the amount of the note sued on, and a decree entered foreclosing the mortgage on the land; from which the intervenors have prosecuted this appeal.

There was no attempt to disprove the indebtedness of Bethel Spurlock to the plaintiff Sullivan, and no complaint is made here that the District Court rendered judgment in favor of the plaintiff for the amount of the note and interest, and the judgment in that respect will not now be disturbed.

Neither is there any contest in regard to the mortgage, so far as the interest of Bethel Spurlock is concerned. If, therefore, Bethel Spurlock owned the land in controversy at the time of executing the mortgage, or if he held the legal title to the same, and Sullivan became a mortgagee for a valuable consideration, paid without notice of prior equities upon the land, then his mortgage must be held good and binding upon the land, and the judgment of the District Court in all things be affirmed.

The only parties who dispute the title of Bethel Spurlock to the land in controversy, or his right to mortgage the same to Sullivan, are the intervenors, who claim prior and superior equities in themselves. We must, therefore, in order to a proper disposition of this cause, determine whether the intervenors had such an interest in the mortgaged premises, as Bethel Spurlock could not rightfully dispose of or encumber, and which it would have been, before the execution of the mortgage, the duty of the courts to enforce; and if so, then did the plaintiff Sullivan, at the time of taking the mortgage, have actual or constructive notice of such prior equities.

The intervenors claim that the land in controversy was purchased with the proceeds of the sale of the negro woman Betsy, and we think the bill of sale of October 26th, 1863, the testimony of Drury Spurlock, Jno. G. Sanderson, W. P. S. Majors, Levi Robinson, and John Robinson, and the statement of N. M. Good, establish the validity of that claim beyond a reasonable

33

doubt.  Bethel Spurlock stated on several occasions that his object in disposing of Betsy was to enable him to buy a place or home; and he made a proposition to Good to exchange the negro for the land, but, as Good did not want the negro, he sold her to M. Robinson, as he said, to raise money to buy the Good place, and did buy and pay for the Good farm soon after the sale of the negro; and in 1865 or 1866, Bethel Spurlock tacitly admitted to Sanderson that he had bought the land with the negro Betsy, but claimed that she was his own individual property.  These and other facts proven would now estop him from denying that the land was purchased with the proceeds of the sale of the negro Betsy.  Nor can there be a reasonable doubt that the negro Betsy was the joint property of Bethel, Drury, Jane, and Mary Jane Spurlock.

The contract of 1858, signed and sealed by all the parties, unimpeached, but, on the contrary, fully sustained and corroborated by subsequent statements of Bethel Spurlock, and other facts, down to the sale to Robinson, which was a joint sale by all the parties, place it now beyond the legal power of Bethel Spurlock to claim that Betsy was his individual property.  It is claimed, however, in the brief of appellee, that the agreement of 1858 and the testimony of Drury Spurlock were admitted in evidence against their objection, and should not therefore be considered as testimony in the case; but this objection does not appear in the transcript, and it is sufficient to say, that no objection to testimony will be considered by this court that was not taken in the court below, and which objection does not appear of record.  The conclusion is therefore irresistible that, at the time of the execution of the mortgage upon the land in controversy, Bethel Spurlock, notwithstanding he held the legal title to the whole land, was the *bona fide* owner of but a one-fourth interest in the land, and that he held the other three-fourths interest in trust for the benefit of his mother, brother, and sister; and, as he held and occupied the whole in exclusion of the other owners, his interest would be liable for the reasonable value of the use and occupation of the other three-fourths, for the time

the same was so held by him, or by his assignees, with notice of the rights of the other joint owners.

There remains, then, but one inquiry to be determined, in order to arrive at a just opinion of the relative rights and equities of all the parties. Did H. H. Sullivan, at the time of taking the mortgage upon the land in controversy from Bethel Spurlock, have actual or constructive notice of the equities of the intervenors? If so, then he took only the interest of Bethel Spurlock, subject to the superior equities of the intervenors. The testimony on this point establishes the facts, that in 1860 Sullivan and the Spurlock family came to this State from Tennessee together; that Sullivan married a relative of the Spurlocks, and that they were friendly, and on intimate terms; that they settled in the same county, and that Sullivan was often at Spurlock's house; that Bethel Spurlock had but little property, excepting some negroes; that the land was purchased in 1863, and Bethel Spurlock and the intervenors moved upon it and made it their home for some years, where they were visited by Sullivan.

In 1866, a disagreement arose between Sullivan and Bethel Spurlock, in regard to an old debt due to Sullivan from Spurlock, which had been contracted in Tennessee. The matter was left to arbitration, and to settle the award of the arbitrators, or a portion of it, the note and mortgage sued on were given. At the time of arbitration, or soon after, Spurlock offered, among other things, to sell, mortgage, or lease the land in question, to settle this pre-existing debt; and it appears that Sullivan chose to have a portion of the debt paid then, and to take the note of Spurlock, secured by a mortgage on the land, for the balance.

About the time the mortgage was taken, Sullivan said to Kinkead that he feared the title was not clear, that other parties would claim an interest in it, and that litigation would follow. This raises a very strong presumption that Sullivan, at the time he took the mortgage, knew that others claimed an interest in the land. Appellee claims that this statement was made by

Sullivan after the mortgage was executed, and that therefore it can have no legal bearing on this case. But it may be observed that the offer of sale was made about the time the mortgage was executed, and this was a subsequent explanation why the mortgage for a part of the debt was preferred to a purchase. There is no proof, nor any attempt to prove, that any other person or persons, excepting the intervenors, were then, or at any other time, making any claim to the land, or any part thereof; but it is in proof that the intervenors claimed an interest in the land, and that they lived upon it, and that Sullivan visited them there, and was intimate with the family, and we are of the opinion that the only proper and legitimate conclusion to be drawn from all the facts of the case is, that he well knew that the intervenors claimed an interest in the land; that he knew the character and extent of that claim, and that he should be held to have taken the mortgage subject to all the rights and equities of the intervenors, and held to abide the consequences.

But the mortgage to Sullivan was given to secure the payment of a pre-existing debt, and was not, therefore, made for a valuable consideration, paid. The consideration may have been sufficient as between the parties, but was inadequate to shut out the claim of prior equities, though that claim of prior equities may have been wholly unknown to the mortgagee.

Chancellor Walworth, in Padgett v. Lawrence, 10 Paige, 180, says: " As a general rule, a purchaser of the legal title, who " receives his conveyance merely in consideration of prior in-" debtedness, is not entitled to protection, as a *bona fide* pur-" chaser for a valuable consideration, without notice;" and Lord Hardwicke, in Willoughby v. Willoughby, 1 Term, 763, says, that in order to entitle a party to protection, as an innocent purchaser for a valuable consideration, without notice, " he " must be a purchaser for a price paid, and without notice; and " when I speak of a purchaser for a valuable consideration, I " also include a mortgagee, for he is a purchaser *pro tanto.*" (See also Willard's Equity Jurisprudence, 256, and Story's Equity Jurisprudence, Section 1503.) Mr. Willard says:

" The rule with regard to purchasers of realty, is the same as
" that in respect to indorsees of negotiable or commercial
" papers.   It is not enough to shut out the equities of prior
" parties to a note, that the holder received it in good faith and
" before maturity, unless he paid value, or parted with a con-
" sideration upon the faith of the paper.   If he receive it on ac-
" count of previous indebtedness, although upon a valid con-
" sideration between the parties, he is in no worse condition
" with respect to such previous indebtedness than he was be-
" fore;" and his claim will be subject to prior equities.

This doctrine has been fully recognized by the courts, with
great unanimity.   (10 Paige, 180; Rose v. Brotherson, 10
Wend., 86 ; Coddington v. Bay, 20 Johns., 639; Manhattan
Co. v. Reynolds, 2 Hill, 140; Small v. Smith, 1 Denio, 583;
Payne v. Cuttler, 13 Wend., 605 ; Staker v. McDonald, 6 Hill,
93.)   These authorities and the reason of the rule establish
beyond controversy the fact that H. H. Sullivan took his mort-
gage subject to the prior equities of Drury, Jane, and Mary
Jane Spurlock, and that, so far as their interest is concerned,
that mortgage must be held null and void.

We deem it unnecessary to notice the exceptions to the rul-
ings of the court in relation to the assignment of Drury Spur-
lock, to his mother, further than to say, that so far as this cause
is concerned, as presented by the transcript, it can have no legiti-
mate bearing in the decision of the cause.   It may be presumed
that the assignment was made in order to remove the incom-
petency of Drury Spurlock, as a witness in the case.   The as-
signment was objected to as evidence, and the objection was
sustained by the court, and yet, so far as the record informs us,
Drury Spurlock's testimony was admitted without objection,
and it is too late now to claim that it should not have been ad-
mitted ; and if the intervenors, and parties interested, are con-
tent with the assignment of Drury Spurlock to his mother, we
can see no good reason why the appellee should be heard to
complain.

The question of the illegality of Confederate money is not

legitimately presented in the record, and therefore we choose not to notice counsel's argument in that respect.

This view of the law and the facts of this cause will require that the judgment of the District Court be reversed; and this court, proceeding to enter such a judgment as should have been rendered by the District Court, the clerk of this court is hereby directed to enter a judgment in favor of the appellee Sullivan, and against defendant below, Bethel Spurlock, for the amount of his note and interest, and for a foreclosure of appellee's mortgage so far as the interest of Bethel Spurlock is concerned, after satisfying the prior rights and equities of the intervenors; and a further judgment in favor of the intervenors, and against both the plaintiff and defendant below, for an undivided three fourths interest in the land in controversy, the same being the original interest of Drury Spurlock, Jane Spurlock, and Mary Jane Spurlock; and a further judgment against Bethel Spurlock, for the sum of six hundred dollars, the reasonable value of their proportion of the rents and profits of the land, since they were evicted by Bethel Spurlock, and that an order of sale do issue to sell as under execution the one-fourth interest of Bethel Spurlock, to satisfy this judgment for six hundred dollars; and if the same shall sell for more than enough to pay the six hundred dollars, interest, and cost, then the balance be paid over to the appellee, in satisfaction of his judgment: and for a judgment against appellee, for all costs of this proceeding.

Reversed and rendered.