# Cook, adm'r &c. *v.* Parham & Blunt.

## *Bill in Equity for Foreclosure of Mortgage.*

1. *When mortgagee is purchaser for valuable consideration.*—When a mortgage is taken merely as security for a pre-existing debt, without an extension of the day of payment, or any new consideration, the mortgagee is not regarded as a purchaser for valuable consideration, nor entitled to protection against prior equities of which he had no notice; *secus,* when the consideration is a debt contemporaneously contracted, or the extension of a pre-existing debt.

2. *Assignment of debt and mortgage by heirs (or devisees) of mortgagee.*—A conveyance of the mortgaged premises, by the heirs (or devisees) of the deceased mortgagee, to the wife of the mortgagor, operates in equity as an assignment of the secured debt; and their assignment of the secured debt to her, whether they have the legal title or not, passes an equity against all the world, except creditors whose rights are affected: a stranger can not be heard to question the validity and effect of such assignment.

3. *Presumption of satisfaction of mortgage.*—A mortgage will not be presumed to be satisfied, merely from the lapse of twenty years before filing a bill to foreclose it, when partial payments were made on the debt, and it was reduced to judgment, before the lapse of twenty years.

4. *Conclusiveness of judgment.*—A judgment against the mortgagor, rendered prior to the execution of the mortgage, binds the mortgagee as a privy, and is conclusive as to all defenses which might have been urged against the claim on which it is founded.

5. *Attorney's authority after client's death.*—An admission of a mistake in the amount of a judgment, and a consent to its correction, made and given by the plaintiff's attorneys of record after his death, are not within the line of their authority.

6. *Rents and profits; when not charged against mortgagor's widow.*—When the mortgagor dies in possession of the mortgaged premises, his widow is entitled to remain in possession, taking the rents and profits, until her dower is assigned, or until the mortgage is foreclosed; and she will not be charged with rents and profits, as a mortgagee in possession, at the suit of another mortgagee, because she took an assignment of the mortgage after her husband's death.

APPEAL from the Chancery Court of Lowndes.
Heard before the Hon. H. AUSTILL.

The original bill in this case was filed on the 10th August, 1871, by John G. Parham and Beverly Blunt, partners doing business under the firm name of Parham & Blunt, against .the administrator, widow, and children of Harry W. Adams, deceased; and sought to foreclose a mortgage on a tract of land, executed by said Adams in his life-time. The mortgage was dated the 16th March, 1866, and purported to be given to secure the payment of a promissory note for $2,032.91, of even date with the mortgage, and payable on the 1st November, 1866, to the order of J. F. Johnson & Co. The firm of J. F. Johnson & Co. was composed of J. F. Johnson, of Montgomery, Alabama, and R. K. Walker and Thomas McKnight, of the city of New Orleans; and after its dissolution, by the withdrawal of said Johnson, Walker and McKnight transferred the debt to said Parham & Blunt, by an instrument of writing, dated December 13, 1869, in these words: "For and in consideration of the sum of $2,500, owing and due by R. K. Walker & Co. to Mess. Parham & Blunt, we hereby sell and transfer to said Parham & Blunt a certain debt we have and own against H. W. Adams, of Lowndes county, Alabama; being said Adams's note, secured by mortgage, for about $2,032, now in the hands of our attorneys, Mess. Cox & Witcher, of Hayneville, Alabama, for collection at law. We authorize our said attorneys to pay over to said Parham & Blunt the proceeds of said claim, when collected, in whole or in part, after deducting fees for collection."

Adams bought the lands, in 1848, from Alfred V. Scott, and took a conveyance in his own name; paying $700 of the purchase-money in cash, and giving his two notes for the residue, for $500 and $1,000 respectively, payable one and two years after date, with a mortgage on the lands to secure their payment; but, for some unexplained reason, this mortgage was either not recorded, or was delivered up and cancelled, and another mortgage executed in its place on the 3d March, 1849. Partial payments were made on these notes; and in 1863, after the death of said Scott, William O. Nixon, as his executor, recovered a judgment on them, against said Adams, for $2,440, the estimated balance then due. Several executions were issued, from term to term, on this judgment; and in March, 1867, the lands were sold under an execution issued on it, said Nixon becoming the purchaser, and receiving the sheriff's deed. Scott's widow and two children were his only heirs and devisees; and on the death of said Nixon, which occurred in 1868, he devised and bequeathed all his property to them. Adams continued in the possession of the land, with his family, until his death,

in March, 1870. On the 16th December, 1869, Mrs. Rebecca Adams, his wife, purchased from the widow and children of said Scott the said judgment and mortgage, taking from them a deed and assignment, in these words:

"Know all men by these presents, that we, Alice E. Garnett and A. S. Garnett, her husband, and W. O. N. Scott and Rebecca B. Scott, for and in consideration of the sum of three thousand dollars, of which twenty-five hundred is in hand paid to us, and for the other five hundred Rebecca S. Adams has executed her promissory note, payable to Alice Garnett, on the 20th October, 1870; we do hereby bargain, sell and convey, unto the said Rebecca S. Adams, for her sole and separate use, free from all debts, contracts, or control of her present or any future husband, all the right, title and interest, in law and in equity, we have in and to the following described real estate," &c.; "to have and to hold, to her and her heirs, forever; and we hereby warrant the title hereby conveyed, against the lawful claims of our heirs, or any one claiming under us. Witness our hands," &c.

"For and in consideration of the sum of three thousand dollars, to us in hand paid, we hereby sell and transfer to Rebecca Adams, for her separate, sole, and exclusive use, free from the debts, contracts, and control of her present husband, or any future husband she may have, a certain judgment recovered in the Circuit Court of Lowndes county, by W. O. Nixon, against Harry W. Adams, on the 30th day of April, 1863, for the sum of $1,000 principal, and $1,440 interest, besides $8.90 costs of suit. And in consideration of the aforesaid, we do hereby sell and convey to the said Rebecca S. Adams, for her sole and separate use as aforesaid, a certain mortgage executed by said Harry W. Adams on the 3d day of March, 1849, to Alfred V. Scott, conveying the following real estate as security for the notes, the cause of action in the afore-mentioned judgment, to-wit," &c., describing them. (Signed by the same parties, but without seal or date.)

These facts were set up by Mrs. Adams, in her answer to the bill; and she further alleged that the $700, of the original purchase-money to Scott, paid in cash by her husband, was paid by him out of moneys belonging to her separate estate, which she had and owned at the time of her marriage; that her said husband was at that time insolvent, and so continued up to the time of his death; and she insisted on her superior title, legal and equitable, under these facts. She alleged, also, that the mortgage to J. F. Johnson & Co. was given to secure a loan of Confederate money, treasury-notes, or bonds, and was therefore without legal consideration, and

[Cook, adm'r, &c. v. Parham & Blunt.]

void; and she prayed that her answer might be taken and deemed a cross-bill, and that said mortgage might be annulled and cancelled. An answer was filed by the adult children of Adams, denying the validity of the mortgage set up by the complainants; and formal anwers were filed by the administrator and the guardian *ad litem* of the infants.

It was admitted that Martin & Sayre, the attorneys of record, by whom the judgment in favor of Nixon against Adams was obtained, would testify that there was a mistake in the amount for which the judgment was taken, and that it should have been taken for only $1,604.76, as shown by a statement and calculation contained in a letter which they had written to the defendant's attorneys, dated March 26, 1869; and in which they also consented to the correction of the mistake. J. F. Johnson died in the latter part of the year 1871. A letter which he had written in May, 1871, was admitted in evidence, "subject to all legal objection thereto for relevancy," in which he thus stated the consideration of the mortgage executed to his house by Adams: "The consideration of the mortgage given by Adams was for moneys advanced and loaned to him before and during the war, amounting to about $10,000, and since the war, at the time the mortgage was executed, a further advance of $300. The old debt was scaled, and the amount agreed on by us, and the $300 added to it, making the amount of the mortgage."

On a hearing on pleadings and proof, the chancellor held: 1. That the sale of the lands under the judgment in favor of Nixon was void, and passed no title; and that, even if title passed, it was subordinate to the lien of the complainants' mortgage, because of the stay of execution by plaintiff after the execution of the mortgage. 2. That the purchase-money paid by Adams to Scott, and all the improvements erected on the lands after the purchase by Adams, were paid and made with moneys derived from and belonging to the separate estate of Mrs. Adams; that she (or her administrator, she having died pending the suit) was entitled, under the cross-bill filed by her, to charge the lands with the moneys thus expended by her husband; and that this equity was superior to the lien of the complainants' mortgage, except as to the $300 loaned or advanced to Adams at the time the mortgage was executed. 3. That the heirs and devisees of Scott must be held to have acquired the note and mortgage in due course of administration; that their conveyance and assignment passed their interest to Mrs. Adams, and that this lien was superior to that of the complainants' mortgage. 4. That the mortgage to Scott was not barred by the statute of limitations. 5. That Mrs. Adams, or her estate, holding the

[Cook, adm'r, &c. v. Parham & Blunt.]

first mortgage, should be charged, in favor of the complainants, as second mortgagees, with the reasonable rent of the land each year after the second mortgage was given. He ordered a reference to the master, and directed him to state an account in accordance with these principles.

At a subsequent term, after the register's report was made, the chancellor modified his former decree, and held that the complainants' equity, under the mortgage to J. F. Johnson & Co., was superior to any lien or equity set up by Mrs. Adams, except as to the amount due on the mortgage to Scott, held by her; and that she should be charged, as a mortgagee in possession, with the rents of the land each year, and allowed a credit for taxes paid, &c. The account being restated under this decree, a final decree was rendered, allowing to the estate of Mrs. Adams, on the mortgage assigned to her, the sum of $1,017.37, to be first paid out of the proceeds of the sale of the land; and directing the lands to be sold by the register, and the amount due on the complainants' mortgage to be paid out of the proceeds, after deducting the amount thus allowed to her estate.

The appeal is sued out by the administrator of Mrs. Adams, and each ruling of the chancellor against her, as above stated, is assigned as error.

GIRARD COOK, and CLOPTON & GRIFFIN, for appellant.

WATTS & SONS, W. K. HAUGHTON, and R. M. WILLIAMSON, contra.

(No briefs have come to the hands of the Reporter.)

BRICKELL, C. J.—A mortgagee, taking a mortgage as security for a pre-existing debt, is not a *bona fide* purchaser for a valuable consideration, protected against prior equities of which he has no notice.—*Boyd v. Beck*, 29 Ala. 703. But, if the mortgage is security for a debt presently contracted, the security enters into the consideration on which the credit is given, and the mortgagee will stand in the relation of a purchaser entitled to protection against equities of which he has no notice. In this case, a part of the consideration was a debt contracted presently, and a pre-existing debt, founded on a consideration of Confederate notes, which was reduced in amount to a sum agreed upon as their actual value, and the day of payment extended—in effect, the old debt was extinguished, and a new one created. The general rule, that priority in point of time gives priority in point of right, prevails alike in courts of law and equity. The whole theory

VOL. LXIII.

upon which protection is afforded a purchaser, against prior equities of which he has no notice, is, that in reliance upon the legal title he has parted with a consideration of value, or divested himself of some legal right, or been induced to change his condition, so that a deprivation of the legal title would work him injustice. His equity, though younger in point of time, is equal in conscience to the older equity with which it may be intended to burden the legal estate. Courts of equity, therefore, refuse to interfere against him. The extinguishment of the pre-existing debt, not a mere change in its form; the creation of a new debt, founded on a new consideration, giving a new day of payment, brings the mortgagees in the relation of *bona fide* purchasers, who are entitled to protection against the resulting trust asserted by Mrs. Adams.—*Schempert v. Dillard*, 55 Miss. 361; 1 Jones on Mortgages, §§ 458-9. It is not necessary, therefore, to consider whether the evidence establishes the existence of the trust.

The conveyance by the heirs or devisees of Scott, to Mrs. Adams, of the premises embraced in the mortgage to their ancestor, executed by Adams in 1849, would, in a court of equity, operate an assignment of the debt secured by the mortgage.—*Welsh v. Phillips*, 54 Ala. 309. Independent of that conveyance, there was a separate assignment of the debt. True, the personal representative does not join in the assignment. He had died before it was made; and it is but a fair presumption, when distributees or legatees are found controlling choses in action which were assets, in the absence of an administration, after the lapse of several years from the death of the ancestor, that their possession is rightful, and that they are clothed with the legal title. That title they can acquire by a transfer from the personal representative, or by a distribution in the Court of Probate. But, whether they had the legal title or not, their assignment would pass an equity, which would prevail, unless there were creditors whose rights were affected. No creditors are shown to exist, and it is not for a stranger to question the validity and effect of the assignment.

There is no room for a presumption of payment of this debt. Judgment was obtained upon it in less than twenty years after its maturity, and payments were made upon it, which repel such a presumption, though more than twenty years had elapsed before the filing of the cross-bill to foreclose it. The judgment having been rendered before the mortgage to the appellees, they are bound by it as privies of the mortgagor.—*McClelland v. Ridgway*, 12 Ala. 482; *Crow v. Hudson*, 23 Ala. 393. It was conclusive of the rights of

the parties, and fully determined all defenses, whether of prior payments or otherwise, which could have been urged against the debt.—*Mervine v. Parker*, 18 Ala. 241; *Burt v. Hughes*, 11 Ala. 571; *DeSylva v. Henry*, 3 Porter, 132. A concession that the judgment was, by mistake, rendered for a larger sum than was due, would not avail the appellees, unless the finality and conclusiveness of the judgment was impaired. The admission of the mistake, and a consent to its correction, made and given by the attorneys of record, subsequent to the death of the plaintiff, was not within the line of their authority. The chancellor was, therefore, in error in not allowing the amount of the judgment as the mortgage debt.

The liability of a mortgagee in possession for rents and profits, and his duty to apply them in reduction of the mortgage debt, may be admitted. But there is no room for considering Mrs. Adams as a mortgagee in possession. Her possession was a mere continuation of that of her husband, and she was entitled to remain in possession, taking the rents and profits, until her dower was assigned, or there was a foreclosure of the mortgage.—*Boynton v. Sawyer*, 35 Ala. 497. There was error, therefore, in charging Mrs. Adams with rents.

For the errors we have pointed out, the decree must be reversed, and the cause remanded.

STONE, J., not sitting.