## S. H. ABERNATHY V. MARY A. STONE.

### No. 7101.

1. **Deed for Land—Words not a Quitclaim.**—A conveyance for 866⅔ acres out of a league survey, describing the land sold, reciting a consideration, with words of conveyance as follows, "have this day, do by these presents sell, alienate, convey, and quitclaim unto said [grantee], his heirs and assigns forever, all and singular the following described tract of land [describing it], and containing 866⅔ acres of land, and all right, title, and interest which I have and devise to the above described tract of land by virtue of the survey aforesaid I sell, convey, and quitclaim to the said [grantee], from me and my heirs forever," *held* a deed for the land, and not a mere quitclaim for the chance of it.

2. **Conveyance of Land not Patented as Affecting the Land Certificate.**—Such a conveyance of part of a tract surveyed but not patented will operate as a conveyance by estoppel of both the legal and equitable title to the land upon the issuance of patent therefor to the grantor.

3. **Effect of Floating a Location upon Equitable Rights.**—The owner of a land certificate, after having conveyed a part of a survey made under such certificate, lifted the certificate and relocated it without the knowledge of his grantee of part of the first location, upon obtaining a patent in his own name for the second location he takes the legal title to the land; the equity in the grantee of the part of the first location may be lost by laches; and stale demand for ten years is a defense against such equity.

4. **Pleading—Insufficient Allegations of Trust.**—The plaintiff seeking to recover a tract of land patented to another and alleging title under a conveyance of a specific part of a former location under the certificate under which the patent issued, the relocation being in several tracts, *held*, it is insufficient to show a relocation of one of the tracts without alleging that it was so located by virtue of the part of the original certificate applied to the land which had been conveyed to the plaintiff.

5. **Equitable Limitation—Laches.** — Before patent the owner of a land certificate which had been located and survey made sold a part of the survey. He lifted the certificate and relocated it and obtained patent upon the second location without the knowledge of his vendee of a part of the first location. *Held*, that the patent conveyed the legal title, and that taking the patent in his own name was an adverse claim putting into operation limitation which would run from date of the patent.

APPEAL from Falls.    Tried below before Hon. John R. Dickinson. The opinion states the case.

*Goodrich & Clarkson*, for appellant.—1. A conveyance of land carries with it the land certificate by virtue of which the land is located, and the ownership of land which is subsequently located by virtue of the certificate follows the ownership of the certificate and becomes the property of the owner of the certificate.   Renick v. Dawson, 55 Texas, 107; Harwood v. Wylie, 70 Texas, 543; Lockmart v. Keller, 9 S. W. Rep., 179.

2.   Such conveyance of the certificate conferred on Abernathy a title to the land subsequently located by virtue of the certificate, and instantly on the issuance of the patent to the heirs of Fanthorp the legal

title vested in plaintiff, the vendee of Fanthorp, and plaintiff can not become barred by mere laches.    He is to be barred by adverse possession alone.    Adams & Wicks v. House, 61 Texas, 641; Satterwhite v. Rosser, 61 Texas, 172.

. 3.    If the title of Abernathy was not legal to the land sued for, by reason of the patent to the heirs of Fanthorp, it was at least the superior equitable title, and the title of Fanthorp's heirs was the naked legal title without interest, which she held in trust for the owner of the superior equitable title; and equitable limitation would not begin to run against the plaintiff's suit to divest the legal title till the trustee repudiated the trust and set up a hostile claim and the cestui que trust had notice of such repudiation.    Gibbons v. Bell, 45 Texas, 417; McKin v. Williams, 48 Texas, 93; Goode v. Lowery, 70 Texas, 150; Neyland v. Bendy, 69 Texas, 711; Hunter v. Hubbard, 26 Texas, 546; Wheat v. Owens, 15 Texas, 241.

4.    Although the delay has been so great that a court of equity will not divest the legal title, yet if the title is a bare legal title without interest and a mere trust of the legal title without further right, the holder of the superior equitable title is entitled to possession, and may defend or recover the possession from the trustee of the legal title. Gibbons v. Bell, 45 Texas, 417; Goode v. Lowery, 70 Texas, 150.

*Neal & Kettler* and *J. A. Martin,* for appellee.—1.  If the conveyance of Fanthorp to Abernathy in March, 1854, gave him any right at all in or to land subsequently located by virtue of the Fanthorp certificate and patented to Fanthorp or his heirs, it was purely an equitable claim and subject to the equitable defense of stale demand or laches, to support which actual possession by the owner of the legal title is not necessary.    Wilson v. Simpson, 68 Texas, 309–311; Hermann v. Reynolds, 52 Texas, 395; McFaddin v. Williams, 58 Texas, 629; Carlisle v. Hart, 27 Texas, 352; Evitts v. Roth, 61 Texas, 86; Yeary v. Cummins, 28 Texas, 96; Glasscock v. Nelson, 26 Texas, 154, 155.

2. · The holder of the equitable title to land is bound to use proper diligence to invest himself with the legal as well as the equitable title, and must inform himself within a reasonable time of all hostile acts on the part of the trustee in dealing with the trust property, under penalty of losing his rights by laches.    Carlisle v. Hart, 27 Texas, 352; De Cordova v. Smith, 9 Texas, 129; Yeary v. Cummins, 28 Texas, 96.

MARR, JUDGE, *Section A.*—This suit was instituted in the District Court of Falls County June 9, 1888, by the appellant against the appellee, to recover the title and possession of an undivided 866 acres in a large tract of land lying in Falls County, and patented to Henry Fanthorp by virtue of his headright certificate.  The plaintiff claimed

as a vendee of Fanthorp, and the defendant as his sole heir. The plaintiff set up the facts constituting his right at length, and prayed to recover the land, and that title be divested out of the defendant and be vested in the plaintiff.

The defendant filed various exceptions and demurrers to the plaintiff's pleadings, among which she excepted because it appeared from plaintiff's pleadings that his claim was stale and barred by lapse of time. The court overruled all of the defendant's demurrers except the one alleging laches, which was sustained and plaintiff's suit dismissed, from which the plaintiff appeals.

The plaintiff in his original petition states that on the 23d day of March, 1854, Henry Fanthorp, the ancestor of the defendant, was the owner and in possession of a tract of 1314 acres of land lying in McLennan County, Texas, which the plaintiff described by metes and bounds, which said tract of land was located and surveyed by virtue of said Fanthorp's headright certificate for one league and labor of land, and on said day said Fanthorp by his deed of conveyance of that date, a copy of which is made part of plaintiff's petition, conveyed to the plaintiff 866 acres of said land by metes and bounds, which is described in said deed and petition. This deed is in the usual form, recites a consideration of $1000 cash paid, and shows that the land was located by virtue of said Fanthorp's headright certificate. The words of conveyance in the deed are: "Have this day, do by these presents sell, alienate, convey, and quitclaim unto the said Abernathy, his heirs and assigns forever, all and singular the following described tract of land, to-wit:" Then follows the description of the land, which concludes as follows: "And containing 866⅔ acres of land, and all right, title, and interest which I have and devise to the above described tract of land by virtue of the survey aforesaid I sell, convey, and quitclaim unto the said Abernathy, from me, my heirs, and assigns forever."

That by virtue of said deed plaintiff says he became the owner of an undivided part of said land certificate, amounting to the quantity of land in said deed conveyed. That on the —— day of March, 1859, said Fanthorp floated and removed from said land and other lands located by virtue of said certificate, said land certificate, and by virtue of said certificate so floated and removed located and surveyed the tract of 2322 acres of land lying in Falls County, which plaintiff describes by metes and bounds, and an undivided part thereof amounting to 866⅔ acres he seeks to recover in this suit. That on August 10, 1868, a patent was issued to the heirs of Fanthorp for said land. That said Fanthorp is dead, and the defendant is his sole heir. Plaintiff alleges the defendant's forcible entry and ouster of plaintiff January 1, 1888. That he does not know where the balance of said certificate is located, and he prays that the defendant be required to disclose. He prays that

plaintiff's title to 866⅔ acres be established and he be adjudged to be the owner of the same, and all title thereto be divested out of defendant and vested in plaintiff, and prays for partition and recovery of possession.

The plaintiff by trial amendment alleged that he never knew that Fanthorp had floated the certificate from the land in McLennan County till 1887. That from 1868 to 1880 he lived near the defendant, and she never, and neither Fanthorp nor the defendant ever, informed him or gave him any reason to suspect such repudiation, or offered to refund him his money, which he had paid. That not till 1887 did he know of the location of said certificate on the land sued for. That defendant did not take possession of said land till 1887, which was the first act hostile to plaintiff.

The court sustained the defendant's demurrer setting up laches.

Appellee accepts the appellant's statement of the nature and result of the suit above, with the following explanations: "The Fanthorp certificate was for one league and labor, or 4605 acres. The 866 acres conveyed by Fanthorp to Abernathy were out of a tract of 1314 acres at that time located and surveyed, by virtue of the Fanthorp certificate, in McLennan County. The appellant alleges that in March, 1859, Fanthorp without appellant's consent floated and removed from said land and from other lands located and surveyed by virtue of the same, said certificate, and by virtue of the said certificate so floated and removed located and surveyed a tract in Falls County containing 2322 acres, out of which he claims 866 acres by virtue of said conveyance."

The assignments of error raise this question: Did the court below err in sustaining the special exception to the petition of the plaintiff on the ground that his claim or title had become a stale demand? The conveyance of the 866 acres of land by Fanthorp described this land by metes and bounds, and the instrument was not, as we think, a quitclaim, but an absolute conveyance of the land itself as contradistinguished from a transfer of the mere chance to or "right, title, and interest" in the land. Richardson v. Levi, 67 Texas, 359. It conveyed by its very terms the land to appellant, "his heirs and assigns forever," and from Fanthorp, his "heirs and assigns forever." If the certificate had not been floated and relocated on other land by Fanthorp, but on the contrary had the original location been continued and patented as made originally in McLennan County, then we think that the instrument of conveyance or deed from Fanthorp to appellant might have been sufficient, upon the issuance of the patent, to have vested both the legal and equitable title by estoppel in appellant to the extent of his purchase. Adams & Wicks v. House, 61 Texas, 641; Satterwhite v. Rosser, 61 Texas, 172, and authorities cited.

Under the circumstances, however, it must be held, as the certificate was in fact floated and relocated on other lands, that therefore the only

effect of the conveyance above mentioned was to transfer the title to a portion of the certificate to appellant. That it had this effect there can be no doubt. Robertson v. Du Bose, 76 Texas, 8; Renick v. Dawson, 55 Texas, 106; Hines v. Thorn, 57 Texas, 102. The contract of sale was fully executed and the purchase money paid by Abernathy to Fanthorp.

But appellant in effect contends that the mere conveyance of the certificate even under such circumstances will, when the land is subsequently located and patented in the name of the original grantee or his heirs, invest the assignee with the legal as well as the equitable title. If this were correct, of course stale demand would be inapplicable. We have found, however, no case that goes to that extent, unless it be Satterwhite v. Rosser, supra, and the facts there so far as stated would indicate that the land had been surveyed before the transfer was made. Where the land is surveyed and the certificate is thus merged therein, though no patent has been issued at the time of the transfer, there is no doubt of the correctness of appellant's position. But where the certificate is conveyed before it is located, and subsequently it is located and the land is patented in the name of the grantee of the certificate, it would seem that the assignee obtains only the equitable title in the land by virtue of the transfer, and the legal title, though inferior to the equitable title of the assignee, vests in the grantee by reason of the location and patent from the State to him. This we think is the correct doctrine. Hermann v. Reynolds, 52 Texas, 395; Keyes v. Railway, 50 Texas, 174; Goode v. Jasper, 71 Texas, 51.

The judgment of the District Court was therefore correct in sustaining the plea of stale demand, unless we can hold from the averments of the petition that the trust was merely a resulting one (not a constructive one born of fraud), and that there was no repudiation of the rights of appellant in the certificate or the land by the acts and conduct of Fanthorp in reference thereto as shown in the pleadings of the plaintiff.

It is in fact very doubtful whether the allegations of the petition are sufficient to show any trust at all in favor of the appellant *in the land in controversy* and which he seeks to recover in this suit. There is an entire failure to trace the location of appellant's portion of the certificate into or upon this particular land. It may have been located with a portion of the certificate belonging to Fanthorp, and if so appellant thereby acquired no interest in this land. The averments of the petition must be taken most strongly against the pleader, and if in any view of the case as thus made the action of the court below was correct it should be sustained by this court. The Fanthorp certificate for 4605 acres of land could not have been exhausted by the location of the 2322 acres in Falls County in which appellant attempts to establish a

trust to the extent of 866⅔ acres. The whole certificate was floated and relocated, and evidently this was done, if at all, by dividing the certificate and locating the parts in different localities. The petition shows only the location, after the certificate was raised, of the 2322 acres in Falls County, and alleges that the plaintiff does not know where "the balance of the certificate was located, and prays that the defendant may be required to disclose." For aught that appears, therefore, the appellant's portion of the certificate may not have been relocated at all, or if the entire certificate was in fact relocated by Fanthorp, then it is just as reasonable to conclude that appellant's portion thereof went in the location of the other lands as that it was located upon the 2322 acres in Falls County. If, however, in view of the fact that the court below overruled the demurrer on this point, we concede that a trust in the land in dispute is sufficiently alleged, still we are of the opinion that the acts of Fanthorp in floating the certificate and in relocating it in his own name and right, "without the knowledge or consent" of appellant, were from the beginning hostile and adverse to any right of the appellant in either the certificate or the land, and were clearly in law a fraud upon his rights in the absence of any explanation of such conduct consistent with good faith upon the part of Fanthorp. There is no fact alleged from which it might reasonably be inferred that Fanthorp recognized the rights of appellant in the matter of the relocation of the certificate or intended it for their joint benefit, but quite the contrary.

Under such circumstances the trust must be regarded as a constructive one and the trustee as an involuntary one, in invitum, from the beginning; or in any event the conduct of Fanthorp, instead of admitting any trust relation, amounted to a clear denial and repudiation thereof from the time he floated the certificate without appellant's knowledge or consent and proceeded to locate it, as must be presumed, entirely in his own interest. From that time laches were imputable to the appellant and equitable limitation began in the absence of any legal excuse being shown.

As it appears, therefore, from the averments of the petition that there was a clear repudiation of any trust by Fanthorp in favor of the appellant, it follows that appellant's demand or claim was stale when this suit was brought, whether the character of the trust be deemed constructive or resulting; but we have no doubt that it was a constructive trust if any at all. Carlisle v. Hart, 27 Texas, 350; Frost v. Wolf, 77 Texas, 462; Cole v. Noble, 63 Texas, 432. In Cole v. Noble, supra, the trust was held to be a resulting one, because no fraud was shown upon the part of the trustee originally, and the investment of the funds in the land was acquiesced in by the beneficiary, and as no repudiation of the trust was proved, it was also held, and correctly, that the plea

of stale demand could not bar the right of recovery on behalf of him whose money had purchased the land. We conclude that the judgment should be affirmed.

*Affirmed.*

Adopted June 16, 1891.

*D. W. Doom,* for appellee, argued a motion for rehearing. The motion was transferred to Tyler Term, and overruled.