TOBIN v. BENSON et al.

(Court of Civil Appeals of Texas. Oct. 19, 1912. On Rehearing, Jan. 4, 1913.)

1. VENDOR AND PURCHASER (§ 231*)—BONA FIDE PURCHASER—NOTICE.

Purchasers whose deeds except a warranty deed in 1894 to the common source of title were recorded prior to the registration of earlier deeds from the common source of title were innocent purchasers, since they might deraign title and defend an action to try title both under the warranty deed and under their quitclaim deeds back of the common source of title, or both.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 513–539; Dec. Dig. § 231.*]

2. APPEAL AND ERROR (§ 934*) — REVIEW — QUESTIONS OF FACT—INFERENCES.

Every legitimate inference from the evidence will be indulged in support of a judgment of the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3781; Dec. Dig. § 934.*]

3. VENDOR AND PURCHASER (§ 235*)—BONA FIDE PURCHASER — CONSIDERATION — SERVICES.

A purchaser, taking a conveyance in pursuance of a contract for legal services to be rendered to the vendor, which were duly rendered by the purchaser at some labor and expense to himself was a purchaser for valuable consideration, notwithstanding his failure to pay back taxes as stipulated in the vendor's deed to him.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 567–569, 571–576; Dec. Dig. § 235.*]

On Rehearing.

4. VENDOR AND PURCHASER (§ 237*)—BONA FIDE PURCHASER — CONSIDERATION — SURRENDER OF NOTES BARRED BY LIMITATION.

A purchaser from a common source of title by deed dated March 27, 1907, without notice of a prior deed not recorded until 1911, surrendered and canceled notes executed by his vendor in 1905, and barred by the four-year limitation in 1910. Held, that while an owner surrendering a pre-existing debt is not a bona fide purchaser for value, since he was thereby placed in no worse condition than he was before as he had parted with nothing of value, yet where he is placed in a worse condition than he was before, or surrenders any security or extends the time of payment, or if the debt has been barred by the statute of limitation, he is a purchaser for valuable consideration, and hence the purchaser yielding up his right of action without knowledge of an adverse claim, so that his action on the notes was barred, changed his position for the worse, and was a purchaser for a valuable consideration.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 577–579; Dec. Dig. § 237.*]

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Trespass to try title by J. W. Tobin against W. D. Benson and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Bean & Klett, of Lubbock, for appellant. W. D. Benson and W. F. Schenck, both of Lubbock, and Mathis & Kay, of Wichita Falls, for appellees.

PRESLER, J. This is a suit in trespass to try title, instituted by J. W. Tobin, appellant, against W. D. Benson and W. E. Freize, involving the title to about 45 lots in the city of Lubbock. Appellees answered by a plea of not guilty, and specially that they were innocent purchasers for valuable consideration, without notice. The case was tried before the court without a jury, and judgment rendered, giving the appellee Freize $27/40$ and to appellee Benson $9/40$ of the land in controversy. From this judgment appellant has appealed, and by various assignments, not necessary to be here consecutively considered, contends, first, that the court erred in rendering judgment for appellees, claiming that they were not bona fide purchasers for valuable consideration without notice, as they claimed title under pure quitclaim deeds, executed by Rufus Bedford, under whom appellant also claims, said alleged quitclaim deeds having been executed long after the title of Rufus Bedford had passed to appellant by previous conveyances; second, that the court erred in rendering judgment for appellee Freize for $27/40$ of the lots in controversy, and refusing to render judgment in behalf of appellant therefor, contending that said Freize was not an innocent purchaser on the ground that there is no evidence that he paid a valuable consideration, and that the only consideration paid by him was the surrender and cancellation of two notes held by him against his grantor H. E. Keys, and further contends that said appellee was not an innocent purchaser, because there was no evidence that said defendant paid a valuable consideration before notice of appellant's title. Appellant also contends that the court erred in rendering judgment as stated for appellee Benson, to the effect that he was not a bona fide purchaser for a valuable consideration without notice as against the title previously conveyed to appellant, claiming that the evidence shows that said appellee's vendor, H. E. Keys, agreed to give said appellee only a quitclaim deed; also that said appellee Benson did not pay a valuable consideration. Appellant also contends that the judgment giving to appellee Freize $27/40$ of the lots in controversy, and to Benson $9/40$ thereof, was error, in that the evidence showed that said appellees obligated themselves to pay the back taxes on the lots in controversy as a part of the consideration expressed and agreed upon in the conveyance to them of March 21, 1907; that the lots were delinquent from 1891 to 1906, and the taxes then amounted to $100 for ¾ interest in said lots besides interest, penalty, and costs, and that the same were never paid by appellees so as to relieve their grantor from liability thereon, and that said lots were not worth exceeding $10 each, and that appellees are therefore not entitled to recover a greater portion in said lots than they had paid for.

It appears from the evidence that appellant claims title to the lots in controversy under the following chain of title, viz.: First, warranty deed from Rufus Bedford to H. E. Keys, of date July 26, 1894; second, warranty deed from H. E. Keys to J. H. Cobb, of date July 18, 1895; third, warranty deed from J. H. Cobb to appellant of date March 8, 1897, all of which of said conveyances were filed for record in Lubbock county, Tex., May 5, 1911. Appellant also introduced in evidence deed from J. H. Cobb to appellant, conveying the lots in controversy without clause of warranty of date May 1, 1911, and filed for record May 16, 1911. Appellees introduced in evidence a deed of special warranty, executed by the said H. E. Keys, conveying to appellees the property in controversy, in the proportion stated in the judgment, of date March 21, 1907, and recorded March 27, 1907; also a quitclaim deed from Rufus Bedford to said H. E. Keys, of date September 26, 1904, and recorded March 27, 1907. Appellant also introduced in evidence a quitclaim deed from Rufus Bedford to appellee Benson, and one from M. G. Abernathy, of date September 30, 1904, and recorded the same date, also a quitclaim deed from M. C. Abernathy to W. E. Freize et al. of date June 22, 1909, and recorded the same date, conveying all of his right and interest to the lots in controversy to the grantees therein named.

[1] It will thus be seen that all of the conveyances under which appellees or either of them hold, with the exception of the warranty deed of 1894 (from Rufus Bedford to H. E. Keys), were recorded prior to the registration of appellant's chain of title, while junior to the same in date of execution, except as to the deed from Cobb to appellant of date May 1, 1911, and that H. E. Keys is the common source of title as to both appellant and appellees. We therefore conclude that there is no merit in the contention of appellant to the effect that appellees cannot be innocent purchasers because they claim under quitclaim deeds executed by Rufus Bedford, from whom the said H. E. Keys acquired title, as the quitclaim deeds thus objected to lie back of the common source under which all parties to this controversy claim. In other words, we perceive no valid reason in law why appellees should not be here permitted to deraign title and defend in this suit, both under the warranty deed of 1894 from Rufus Bedford to appellees' vendor, H. E. Keys, and under the quitclaim deeds referred to or under either or both such chains of title. In this connection, it is further to be observed that, considering the recitals in the deed from Rufus Bedford to H. E. Keys of date September 26, 1904, it is doubtful at least whether this deed should be construed strictly as a quitclaim deed, said deed reciting that, "This deed is made to take the place and in lieu of one certain deed to the above lots, made by me to the said H. E. Keys, on or about the 24th day of February, 1896, which deed has been lost or misplaced and never recorded;" it fairly appearing from the evidence that the only other deed made by Bedford to Keys was the warranty deed of date July 26, 1894, and that this was the deed intended by said reference. It is also to be noted that, while the grantor in the deed in question in the granting clause of said deed, bargains, sells, releases, and quitclaims all his right, title, and interest in the lots in controversy, specifically set out, the habendum clause of said deed is as follows: "To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in any way belonging, unto the said W. E. Freize and W. D. Benson, their heirs and assigns forever; and we do hereby bind ourselves, our heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto the said W. E. Freize and W. D. Benson, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under me." Abernathy v. Stone, 81 Tex. 430, 16 S. W. 1102; Garrett v. Christopher, 74 Tex. 453, 12 S. W. 67, 15 Am. St. Rep. 850; Dougal v. Fryer, 3 Mo. 40, 22 Am. Dec. 458; Stanley v. Hamilton, 33 S. W. 602. We are further of the opinion, and so find from the evidence, that at the time appellees acquired their interest in the property in controversy they had no notice, either actual or constructive, of the unrecorded chain of title, under which appellant claims. This leaves for our determination only the further question as to whether the appellees or either of them paid a valuable consideration within contemplation of the statute for their respective interests in said property, and, as the consideration claimed by each is somewhat different, this phase of the case will be considered separately as to each of the appellees.

[2] While indulging every legitimate inference from the evidence in support of the judgment rendered by the trial court and upon a thorough examination of the evidence, we are constrained to hold and so find, as to the appellee Freize, that the consideration paid by him is not such as will support his claim to the property against the prior unrecorded title acquired by appellant. It appears from the evidence that the consideration given by him for the conveyance to him by Keys, under whom he holds, was, first, surrender and cancellation of a preexisting indebtedness, evidenced by unsecured promissory notes held by him against said Keys, and, second, his assumption of certain unpaid back taxes due from his vendor on the property conveyed. We further find from the evidence that said back taxes referred to, the same being part of the consideration, for the conveyance to both appellees by the said Keys, have never in fact been paid by either of appellees or any one else,

and we do not understand appellees to contend that either the mere assumption of the payment of these taxes or their payment after notice of appellant's title would constitute a valuable consideration. Appellee Freize in his able brief in this case earnestly insists that, because of the laches of appellant in asserting or giving notice of his title, appellee had been lured into permitting the notes evidencing the indebtedness from Keys to himself to become barred by limitation, and that appellee, having thus lost his right to recover on the notes the indebtedness evidenced by them, had parted with something of value as a consideration for his deed, and, if appellant is allowed to recover without compensating him therefor, he would be left in a worse condition than before he gave up his said notes, and that the cancellation and surrender of them should here be considered a valuable consideration, and in support of this contention cites us to the case of Alstin v. Cundiff, 52 Tex. 453, and to the case of Bonner v. Grigsby, 84 Tex. 330, 19 S. W. 512, 31 Am. St. Rep. 48, and the case of Dunlap et al. v. Green, 60 Fed. 242, 8 C. C. A. 600. It occurs to us, however, that a sufficient reply to this contention is that in voluntarily giving the notes and the debt evidenced by them as a consideration for the deed to the land appellee Freize surrendered his right to recover upon the notes in exchange for the remedy afforded him by law, which is the right to recover upon the breach of warranty contained in his deed upon the failure of his title. Nor do we think that the possible fact that he might realize less or nothing by pursuing this remedy than he would have realized by holding his notes or suing on the same would authorize us to here hold that the pre-existing indebtedness in this case constituted a valuable consideration, such as would allow his junior claim to prevail against the unrecorded prior title. It is to be further noted in connection with this contention that, while there is no controversy over the virtual cancellation and surrender of this debt as a consideration for the conveyance to appellee Freize, there is no evidence in the record showing that at the time of the surrender of said notes that the said Keys was solvent and that the notes had value, and, if so, what their value was, and it further occurs to us, as appellee has invoked a consideration of the equities involved in this transaction, that before this pre-existing indebtedness can be here held a valuable consideration, or the appellant required to account for the value of such consideration, the appellee Freize should be required to show what such value was in order to ascertain whether in fact he is placed in a worse position or not. It may be that in this instance the transaction amounted to an exchange of a worthless debt for a worthless title, and that appellee Freize, upon the failure of title conveyed to the lots, is in no worse condition than he was before

he surrendered the notes. We therefore conclude that the only consideration shown to have been parted with by the appellee Freize, being the cancellation of a pre-existing indebtedness, and that by the great weight of authority in this state such consideration is not deemed valuable in contemplation of the statute, that the trial court erred in rendering judgment in favor of said appellee Freize for any portion of said lots, and that said judgment in respect to said appellee should be here reversed and rendered in favor of appellant, which is accordingly done. Overstreet v. Manning, 67 Tex. 661, 4 S. W. 248; Scoggin v. Mason, 46 Tex. Civ. App. 480, 103 S. W. 835; Webb v. Burney, 70 Tex. 325, 7 S. W. 841; Buckley v. Runge, 136 S. W. 533; Caviness v. Black, 33 S. W. 712; Swenson v. Seale, 28 S. W. 146; Shoe Co. v. Lyons, 6 Tex. Civ. App. 633, 25 S. W. 805; Huff v. Maroney, 23 Tex. Civ. App. 465, 56 S. W. 755; McKamey v. Thorp, 61 Tex. 652; Western Gro. Co. v. Alleman, 81 Kan. 543, 106 Pac. 460, 27 L. R. A. (N. S.) 620, 135 Am. St. Rep. 398.

[3] As to the appellee Benson, it appears from the evidence that the conveyance to him of his interest in the lots in question by Keys was in pursuance of a contract for legal services to be rendered to said Keys in the matter of perfecting said Keys' title of record to the 45 lots referred to in representing said Keys in the matter of his said claim to said lots, and that said services were duly rendered by said Benson at the cost of some work and expense to himself. We therefore conclude that as to him, notwithstanding his failure to pay the back taxes shown to have been stipulated for in the deed from Keys to Benson, he, the said Benson, acquired his title to the property without notice as to appellant's unrecorded title and for valuable consideration, and is shown by the evidence in this case to be an innocent purchaser of the interest in the lots awarded him, and that in that respect there is no error in the judgment appealed from which is here affirmed as to said appellee Benson, and, as heretofore stated, said judgment is here reversed and rendered as to appellee Freize, and it is so ordered.

### On Rehearing.

In our former opinion in this case we overruled appellant's contention that appellees could not be innocent purchasers because they claimed under quitclaim deeds executed by Rufus Bedford, holding that said quitclaim deeds objected to lay back of the common source under which all parties to this controversy claim, and thus could not affect the rights of appellees to claim protection as innocent purchasers, and in connection with this holding we further held that it was at least doubtful whether the substitute deed from Rufus Bedford to H. E. Keys of date September 26, 1904, should be given effect only as a quitclaim (in discussing said

deed and the effect to be given the same the mistake in copying the habendum clause and adding a covenant of special warranty to said deed, occurred, which' at this time is corrected in the original opinion). We further held in said opinion that at the time appellees acquired their interest in the property in controversy they had no notice, either actual or constructive, of the unrecorded chain of title under which appellant claims, and, in determining the further question as to whether appellees or either of them paid a valuable consideration within contemplation of our registration statutes for their respective interests in the property in controversy, we held that the appellee Benson paid such valuable consideration, and was entitled to the protection of the statute, and affirmed the judgment in his favor, but held as to the appellee Freize that it appeared that the only consideration paid by him being the surrender and cancellation of a pre-existing indebtedness that the same was not valuable in contemplation of the statute and did not constitute him an innocent purchaser, and reversed and rendered the judgment of the lower court as to said appellee Freize. Both appellant and the appellee Freize have filed motions for rehearing, and, the same having been duly considered, we are of the opinion that there was no error in our opinion heretofore rendered in favor of appellee Benson, and appellant's motion complaining of that part of our opinion affirming this case as to said appellee is therefore here overruled.

[4] Appellee Freize in his motion contends that as he, without actual or constructive notice of the prior deed to appellant, purchased from Keys (the common source) the lots in question, and paid for them by surrendering and canceling two notes for about $1,500 each, bearing 10 per cent. interest, and providing for 10 per cent. attorney's fees, which had been executed in 1905 by Keys to appellee for a valuable consideration, and that as these notes were barred under the four-year statute of limitation in 1910, and that Freize had no notice of appellant's prior deed until the spring of 1911, this court erred in holding that said appellee was not a bona fide purchaser for value within the meaning of our registration statute. Upon a more thorough and .extended investigation of the question here presented, we are of the opinion that we were in error in our former opinion in holding said Freize not to be an innocent purchaser, and entitled to protection of the statute as such. As to whether the discharge of an antecedent debt by a purchaser will enable him to sustain the character of a bona fide purchaser within the meaning of recording acts of this and other states and entitle him to their protection is a question on which the courts differ, and, while the weight of authority seems to be that he is not considered a bona fide purchaser for value for such

purpose, the reason for this holding, as uniformly given in the decisions, is that the purchaser by his purchase is placed in no worse condition than he was in before, as he had parted with nothing of value, but even in jurisdictions adhering to this doctrine it is also held that, if for any reason a purchaser is placed in a worse condition than he was in before, he is entitled to the protection of the recording acts. In the editorial note, found under the case of Western Grocery Co. v. P. B. Alleman and Wife, 27 L. R. A. (N. S.) 620, this precise question is exhaustively considered. A great many authorities are collated, and the reason for said holding is as above cited.

It is also stated that such purchaser is entitled to be protected if he surrenders any security which he formerly possessed, or if he has extended the time of the payment of the indebtedness, or if the statute of limitation has since run, and barred the indebtedness (as in the present instance), citing under this last as authority the case of Dunlap v. Green, 60 Fed. 242, 8 C. C. A. 600. It is to be observed that in the extended collation of authorities given as supporting the text of this note the editor mentions no authority contrary to the text that, if the statute of limitation has since run on the indebtedness, the purchaser who surrendered the evidences of that indebtedness will be protected, and, after extensive investigation, we have been unable to find any such contra authorities. In the case of Steffian v. Milmo National Bank, 69 Tex. 513, 6 S. W. 823, the Supreme Court of this state said: "If the law of innocent purchaser be applicable to appellee's case, we have no doubt he must be deemed a purchaser for value. This court has held that where the consideration of a deed is an antecedent debt only, or where a mortgage is taken merely to secure indebtedness, this is not sufficient to support the claim of a bona fide purchaser for valuable consideration. McKamey v. Thorp, 61 Tex. 648; Spurlock v. Sullivan, 36 Tex. 511. There being no new consideration should the grantee or mortgagee loose the land or his lien upon it, he still has his debt; and for that reason is held to have parted with nothing of value. But should the mortgagee give time upon his debt as a consideration for the security, his case is different. By extending the time of payment he yields up, for a season, his right of action, which is a privilege deemed value in law. This is accordingly held, by the controlling weight of authority, sufficient to support the claim of an innocent purchaser. Schumpert v. Dillard, 55 Miss. 348; Port v. Embree, 54 Iowa, 14, 6 N. W. 83; Cary v. White, 52 N. Y. 138; Gilchrist v. Gough, 63 Ind. 576 [30 Am. Rep. 250]; Cook v. Parham, 63 Ala. 456; Thames v. Rembert, 63 Ala. 561." In the present case it would appear that by the cancellation and surrender of his notes appel-

lee yielded up his right of action thereon for at least a season, and, if he had no knowledge of the adverse claim of appellant until his notes became barred, that he thereby lost a valuable right—that is, to sue upon an unbarred claim—and that his position was to that extent changed for the worse, in that he parted with something of value to him in giving up his right to sue and recover upon his unbarred notes, and is confronted at least by the question as to whether or not he can legally collect such notes, and as to his vendor being acquitted of the debt if he elects to plead limitation against the same, and it can hardly be held that he still has his debt as enforceable in law as when he surrendered it. As between vendor and vendee, a pre-existing debt is a valuable consideration existing until another title is shown which is better, and until that is done the vendee has a good title. If he comes into knowledge of such adverse title while his debt exists, he has parted with nothing valuable, but, if after his right of action on said debt is impaired, it would appear that he has given up something of value, and it would seem to us that a clear cause of action is of more value even than a mere extension of time, which is recognized by the authorities as a sufficient consideration to support a claim of innocent purchaser.

We therefore conclude that appellee's motion for rehearing should be here granted, and that portion of our former opinion inconsistent with the conclusion here reached should be annulled and held for naught, and that the judgment appealed from should be in all things affirmed, and it is accordingly so ordered.