## CAMPBELL et al. v. TURLEY et al.
### (No. 6329.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 4, 1920. On Motion for Rehearing, Oct. 13, 1920.)

1. **Appeal and error** ⊚⇒994(3), 1011(1)—**Trial court sole judge of credibility of witnesses, and finding on conflicting evidence not disturbed.**

In a case tried to the court, the trial judge is the sole judge of the credibility of the witnesses, and his findings based on conflicting evidence are entitled, on appeal, to the same effect as the verdict of a jury.

2. **Appeal and error** ⊚⇒931(3)—**In absence of findings, facts supported by evidence necessary to sustain judgment are presumed.**

Where there were no findings of fact or conclusions of law requested or stated, it will be presumed on appeal that the trial court found all facts which are necessary to support the judgment, if there was evidence from which such facts could be found.

On Motion for Rehearing.

3. **Contracts** ⊚⇒99(1)—**Burden is on party alleging fraud to prove it.**

The allegation of fraud which invalidates an instrument places the burden upon the party making it to establish the fraud by the preponderance of the evidence.

4. **Deeds** ⊚⇒203—**Representations after delivery of the deed immaterial.**

In a suit to cancel a deed for fraud, alleged misrepresentations, made after the delivery of the deed, need not be considered.

5. **Deeds** ⊚⇒211(3)—**Evidence held not to sustain charge of fraud.**

In a suit to cancel a deed for fraud, plaintiff's evidence *held* insufficient to sustain a finding of fraud.

6. **Husband and wife** ⊚⇒138(10)—**Wife bound by fraud of husband which procured deed to her.**

A wife, who was named as grantee in the deed at the request of her husband, is bound by his fraud, causing the conveyance to her.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Action by Emma Burgemeister Turley and others against Bessie Campbell and others to cancel a deed. Judgment for plaintiffs and defendants appeal. Reversed and remanded on rehearing.

Norton & Brown, of San Antonio, for appellants.

Chambers, Watson & Wilson, of San Antonio, for appellees.

COBBS, J. This suit was instituted by appellee to cancel a deed made by her to appellant, Bessie Campbell, for lots Nos. 58 and 59 in block 3129 in South Park, Hunstock addition, city of San Antonio. The case was tried by the court, jury being waived, and, after hearing all the evidence, the court found the facts in favor of appellee, and by decree canceled and set aside the deed, and decreed that appellee recover from appellants title and possession of the said lots. There was no request made for the court's findings of fact or conclusions of law. The suit is predicated upon the alleged fraud of appellants in inducing appellee to make a conveyance to put the title in Mrs. Campbell, appellant, upon false representations that it was necessary to do so to protect her from its ultimate loss, but to be held in trust by her for benefit of appellee. The petition is very full in the allegations charging fraud, overreaching, and misrepresentations. The appellants answered by exceptions and denials of the alleged fraud and setting up other valuable considerations given prior to and subsequent to the execution of the deed other than expressed therein, and that it was a gift in recognition of such valuable services performed.

[1] It is immaterial what we may think of the testimony, if it is sufficient to support the judgment. In this case the testimony is sufficient to support a judgment either way. The judge who tried this case had all the parties before him, heard their testimony, and saw the manner of their testifying, and the judge, like a jury, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and could believe or disbelieve the testimony of any one of them. As said in Zucht v. Brooks, 216 S. W. 686:

"The credibility of witnesses and the weight to be given their testimony are matters placed exclusively in the hands of juries, and appellate courts have no authority under the judicial system of Texas to interfere with that privilege. This is a heritage from the common law, and is preserved in the federal Constitution, and in every state by Constitution or statute."

[2] The evidence showed no part of the recited consideration ever paid, and was suf-

ficient to sustain the general judgment of the court on the issues submitted. Therefore no useful purpose can be served by here setting out the facts and discussing them. Velasco Fish & Oyster Co. v. Texas Co., 148 S. W. 1185:

"The rule is well settled that where no conclusions of fact are requested, or if so requested no conclusions are filed, the appellate court will impute to the trial court such a finding upon every issue of fact as will sustain the judgment, if such finding is supported by the evidence. The appellate court will presume that as to every issue raised by the pleadings, if the evidence will support such finding, every fact necessary to sustain the judgment was found. Fitzhugh v. Land Co., 81 Tex. 314, 16 S. W. 1078. This rule also applies where conclusions are filed in which there is no finding on some material issue." Railway v. Watson, 157 S. W. 438; W. U. Tel. Co. v. Glenn, 156 S. W. 1116; Tobin v. Benson, 152 S. W. 642.

Appellants cite no authorities in their brief, but rely on their two assignments and propositions thereunder, that the testimony is not sufficient to sustain the judgment, and the testimony preponderates in favor of appellants. There were no witnesses introduced on the trial other than the parties to the suit on the issues. They were sharply disputed by each, all of which, as said, were passed upon by the trial court, and found against appellants, and we shall not, for the reasons stated, set aside his findings upon no better showing than made.

The assignments are overruled, and the judgment of the court is affirmed.

### On Motion for Rehearing.

Only two assignments are relied on in the original brief of appellant, or in motion for rehearing, to reverse the judgment. They are the third and the fourth, both which, in effect, insist that, under appellees' testimony, the judgment should be in favor of appellants.

Appellants' claim is that upon the facts they were entitled to a judgment. We have again reviewed, on this motion, all the facts elicited in connection with the pleading, to determine whether or not there has been any fraud sufficiently alleged perpetrated by Mrs. Bessie Campbell or her husband upon appellee to induce the execution of the deed, or in procuring the conveyance.

[3] Fraud in fact taints all instruments into which its vile fluid, so to speak, is infused. But it must likewise be borne in mind that fraud must be properly alleged and proven. To charge one with fraud is easy, but a serious thing to do. It places the burden upon the party to establish it by the preponderance of evidence.

Plaintiff in her petition relied upon the following representations as having induced her to sign and deliver the deed: That Campbell told her that unless she transferred her property the same would be taken away from her by her then attorney, and that the only plausible thing to do and the only way in which she could save her property was to transfer it; that she was advised by defendants that it would be to her benefit to sign the deed, and the only way to save her property.

[4] The representations stated in paragraph 3 are alleged to have been made after the deed was delivered, and therefore need not be considered.

[5] There is absolutely no evidence that Campbell told plaintiff that unless she transferred her property her attorney would take it away from her. She testified that Campbell advised her to execute and file a revocation of the power of attorney, and prepared such an instrument which she executed. It is clear from her evidence that she was not led to make the deed to Mrs. Campbell to save the property to her. Her statement in a book published by her was introduced, wherein she said:

"I offered Mr. Campbell, in my gratefulness, the two lots on Hunstock as a present."

She said she was unwilling to swear that such statement was true as to the one word "present." She admitted that she told Campbell she would give him the two lots if he could accomplish the revocation of the power of attorney. She testified that Campbell told her that after things were settled he would deed the lots back to her, as he was just doing this to keep her attorney from robbing her. This does not agree with the statement in her book, nor is any plausible explanation offered concerning why she believed it necessary to save these lots by this method, but at the very same time saved her home and other lots by revoking the power of attorney, and conveying the same to her sister. She was at the time very severe in her abuse of her former attorney, to whom she had given the general power which she revoked upon the advice of Neil Campbell. That power of attorney gave the right of disposition to all her property, a considerable estate, besides that in controversy. She had supposed it all lost on account of her acts, and right at the moment, while discussing this situation with Mr. Campbell at the house, the evening of the day she made the general power of attorney, a real estate agent rang Mr. Campbell up and asked if she had gone, and stated that this property had been put in his hands for sale by her said agent. She further stated:

"I executed a deed to my home place to my sister. Yes; I state in this book that Mr. Campbell told me then that he would help me to save the property. Yes, sir; he explained to me just how he would do that.

"Q. Now, I will ask you if you didn't say this in this book that was promulgated after May, 1918: 'When I realized through this explanation (by Mr. Campbell) that I could save my little home that way, I offered Mr. Campbell in my gratefulness the two lots next to my house on Hunstock avenue as a present.' Did you say that? I will ask you to read right here: 'I offered Mr. Campbell in my gratefulness the two lots on Hunstock?' A. I might have put that in there 'as a present.' I did put that in there, but I haven't sworn to it. No, sir; I certainly would not swear to an untruth. Yes, sir; I have circulated these books all over the Southwest Texas. I am not willing to swear that that statement is true, not to that one word; no sir. No; I can't say that I have had a change of mind since writing that. Yes; these books were sent out to the public by me by express and otherwise after the date of the filing of this suit; I believe so; I didn't know that one word made so much effect there."

[6] There is no evidence or any claim that Mrs. Bessie Campbell in any way misrepresented any fact or in any way overreached appellee. The deed was made to her direct at request, and there is no sufficient allegation or proof showing any fraud perpetrated on appellee by Neil Campbell to secure it. It is not shown that Mrs. Campbell herself committed any fraud or made any false representations to appellee. Of course she would be bound by fraud, if any, or fraudulent misrepresentations, if any, made by her husband which caused the conveyance to her. Plaintiff alleged that the agreement was made that Mrs. Campbell would hold the title in trust for plaintiff, and testified that Campbell told her he would deed the property back after things were settled, as he was just doing it to keep her attorney from robbing her. This testimony does not accord with the fact that plaintiff believed she could save her other property by deeding it to her sister, and acted upon such belief, nor with her statement in her book that she had conveyed the property as a present. While mental incapacity was pleaded, it was not proven. If it can be said that the allegations are supported by evidence, we conclude that it is of such an improbable and unsatisfactory nature that the judgment should not be permitted to stand. The testimony of Campbell and wife is consistent, and bears no indications of unreliability, while plaintiff's indicates that she actually made a present of the lots for favors deemed sufficient by her, but afterwards became dissatisfied because she believed Campbell had not been as true a friend as she thought he was.

We will not reverse and render the judgment as requested in this case, but will sustain the motion for a rehearing and set aside our former judgment, and reverse and remand this case for a new trial.