RALLS et al. v. PARISH et al.

(Court of Civil Appeals of Texas. Amarillo.
Nov. 16, 1912. Rehearing Denied
Dec. 14, 1912.)

1. COUNTIES (§ 35*)—REMOVAL OF COUNTY SEAT — ELECTION CONTEST — BURDEN OF PROOF.

The burden was on parties contesting a decision that an election for the removal of the county seat had resulted favorably to removal to show that the old county seat town was within a radius of five miles of the center of the county, and that the voters originally voted for the county seat as located.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 38–45; Dec. Dig. § 35.*]

2. EVIDENCE (§ 84*)—PRESUMPTIONS—COUNTY SEAT—LOCATION.

The court cannot presume that, because a part of the plat of an existing town was within five miles of the center of the county, any part of the town itself, as it previously existed, was within that radius; that being a matter of proof.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 106; Dec. Dig. § 84.*]

3. APPEAL AND ERROR (§ 934*) — PRESUMPTIONS—SUPPORT OF JUDGMENT.

The evidence should be viewed in the light most favorable to the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3781; Dec. Dig. § 934.*]

4. EVIDENCE (§ 67*)—PRESUMPTIONS—STATUS OF TOWN.

It cannot be presumed, as a matter of law, that the houses in the built-up part of the town were the same in 1910 as in 1891, when the town was made a county seat.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 87, 88, 103; Dec. Dig. § 67.*]

5. DEEDS (§ 96*)—RECITALS—EVIDENCE.

Every citizen in a town was privy to a deed dedicating a section as the site of a town for use as streets, etc., whether the deed was formally accepted or not, so that recitals in such deed that a town had been built on the section were admissible in evidence in a suit by its citizens to retain the county seat at such place, especially where they themselves put the deed in evidence, without restriction.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 256–260; Dec. Dig. § 96.*]

6. DEEDS (§ 96*)—RECITALS—CONSIDERATION.

A recital in a deed as to its consideration is prima facie evidence on the question.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 256–260; Dec. Dig. § 96.*]

7. COUNTIES (§ 35*)—COUNTY SEAT CONTESTS—SUFFICIENCY OF EVIDENCE.

Evidence, in a suit by citizens of a town to contest an election by which the county seat was removed to another town, *held* to sustain a finding that in voting the county seat of such town the voters intended to vote with reference to the actual location of the buildings and not the town plat.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 38–45; Dec. Dig. § 35.*]

8. APPEAL AND ERROR (§ 1042*)—HARMLESS ERROR.

Any error in striking a part of the petition became harmless, where the trial court heard the evidence on the question raised thereby and filed findings thereon.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4110–4114; Dec. Dig. § 1042.*]

9. ELECTIONS (§ 203*)—LOCATION OF VOTING PLACE.

Where the voting place at a certain town was situated on the boundary line of the county, which had long been a disputed strip also claimed by another county, and the right of the voters to vote at that place had not previously been questioned, and no one outside of the precinct voted at the election, or was deprived of his vote because of the location of the ballot box, the counting of the votes cast in such box did not violate the spirit of the Constitution, though the voting place was in fact located out of the county.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 179, 181; Dec. Dig. § 203.*]

10. APPEAL AND ERROR (§ 1027*)—HARMLESS ERROR—FINDINGS.

Any error in findings that certain votes were not fraudulent would be immaterial, where the result of the election would not be changed if such votes were thrown out.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4033; Dec. Dig. § 1027.*]

On motion for rehearing. Rehearing ordered, and judgment below affirmed.

For former opinion, see 149 S. W. 810.

HUFF, C. J. At the last term of this court this case was reversed and rendered by this court. Appellee, the contestee, filed his motion for rehearing, and thereafter this court certified certain questions to the Supreme Court for its determination. On the 29th day of May, 1912, that court handed down its answers and opinion which had been certified to this court for its observation and guidance and which is reported in 147 S. W. 564. By that opinion it is left to us as an issue of fact to ascertain what constitutes the boundaries of Emma, and in doing so, as we understand the opinion, we must ascertain the intention of the voters at the time of selecting the county seat, as that intention will control. The Supreme Court, in its opinion, says: "The original town plat of Emma as it existed at the time it became the county seat of Crosby county, in 1891, did not constitute the county seat, but rather the collection of inhabited houses and the area pertaining to such houses constituted the town, and therefore the county seat. The town of Emma, as the voters knew it and as they intended it should constitute the county seat, should control." In the light of the opinion of this court rendered in this case and the facts in question certified to the Supreme Court, it would appear that the Supreme Court has eliminated the plat from consideration as the county seat of Crosby county, selected by the voters at the election in 1891. The contestants in this case assail the order of the county judge of Crosby county which declared the town of Crosbyton was selected by the voters at the election September 17, 1910. Article 1393, R. S. 1911, old article 815, provides: "The officers holding the election shall make return thereof to the officer ordering said election within ten days after the same was had, who shall then proceed to open said returns and

count the same and declare the result, which shall be entered upon the records of said commissioners' court and shall also state the name and place from which the same is re-moved and the name and the place to which the same is removed." Until this order so made is set aside or vacated, the town therein named is the county seat. The burden is on the party or the parties assailing it to show that it does not correctly name the town for the county seat. Wallace v. Williams, 50 Tex. Civ. App. 623, 110 S. W. 785.

[1] We hold that the burden was on the contestants in this case to show that Emma was within the radius of five miles of the center of Crosby county, and that it was the intention of the voters of 1891 to vote for such town, and that they did vote for it as located; and, unless contestants discharged that burden, it was not incumbent upon the trial court to disturb the result so announced by the order of the county judge. The contestants introduced a deed from C. A. Benedict, together with a plat of section 2, certificate 16, N. & O. B. R. R. Co. The deed is as follows: "State of Texas. C. A. Benedict of Crosby county, Texas, has laid off section 2, certificate 16, N. & O. B. R. R. Co., original grantee, Crosby county, Texas, into lots and blocks with streets and alleys as shown by the above plat, and whereas a town has been built upon said section so laid off as aforesaid to be known and called by the the name of Emma; therefore, know all men by these presents, that I, the said C. A. Benedict, for and in consideration of the fact that a town has been built upon said section of land and for the purpose of securing the inhabitants of said town in the enjoyment of its streets, alleys and public square, do hereby declare that I have and do by these presents consent to the said subdivision of said section by said plat shown into lots, blocks, streets and alleys of dimensions in feet as shown by the dimensions above given. I do hereby donate unto the said citizens of the aforesaid town the free and uninterrupted use of said streets and alleys and to be held and enjoyed by them so long as so used, otherwise to revert to me, the said C. A. Benedict, or my heirs. The southeast corner of the public square to be the starting point in surveying blocks, lots, streets and alleys. [Signed] C. A. Benedict." They also introduced testimony to show that portions of the town plat were within the five-mile radius, but the facts also show that this plat was filed on the day before the election in 1891 to remove the county seat from Estacado to Emma. The deed purports to be in consideration of "the fact that a town had been built upon said section," and to secure "the inhabitants of said town in the enjoyment of its streets, alleys," etc. And further, "I do hereby donate unto the said citizens of the aforesaid town the free and uninterrupted use of said streets, and alleys." This instrument, together with the plat, is to be treated as one instrument. The town is part of the description of the section and aids in the identification of the land.

[2] The town built on the section is no more to be discarded than the plat of the imaginary streets and alleys, but on what part of the section was it situated in 1891? Shall this court presume, because part of the plat was within the five-mile limit, that the town or any part of it was also? We think the proof ought to furnish the trial court and this court facts to show that some portion of the town was then within the required radius. The voters doubtless knew the town as it would be open to observation. Not necessarily so with the plat. It will not answer the requirements to say the filing of the plat constituted constructive notice. This is not a question of notice, but is one of "intention" on the part of the voters at the time. Did they vote for the plat or the town as then known? On this point, as we understand the record, there is no proof on this vital issue in the case; that is, the "intention" of the voters as to the boundary of the "place." The court must resort to inference to bridge the hiatus. It occurs to us the nature of the case required better evidence. It should be stated that contestants, upon the trial of the case in the court below and in this court, urged that the certificate issued by the Land Commissioner in 1891 should control in fixing the center of the county. As we understand the facts in this case, should that certificate control, then contestants made out a prima facie case; but the Supreme Court has settled that question adversely to contestants. The trial court filed his conclusions of facts and of law, In the fourth finding of facts he finds: "The town of Crosbyton to be situated and was on the day of the election within five miles of the geographical center of Crosby county, as shown by the certificate of August 26, 1910, and that the town of Emma is not and was not at the date of the election within said five miles, but is more than five miles from the geographical center of such county, as shown by the certificate of August 26, 1910."

[3] The trial court, after hearing the evidence, rendered his judgment, and we believe the evidence should be viewed in the light most favorable to the judgment. It has been urged by counsel that the court in his finding did not find that Emma, when first selected as the county seat, was without the five-mile radius. He must have found that Emma since 1891 up to the election in 1910 was the county seat, and that it was then being sought to be removed. We must impute to him the finding that Emma, when chosen for the county seat in 1891, was more than five miles from the center, as shown by certificate of August 26, 1910. In the order declaring Emma the county seat in 1891 it is shown by the order that 109 votes were cast to remove to Emma, 19 votes to section 1, certificate 336, and 3 votes to remain at Estacado. The evidence shows in measuring

from the center of the county as ascertained by the certificate of the Land Commissioner, August 26, 1910, the five-mile limit is reached 197 varas east of the courthouse, according to the witness Orand. This witness says: "There are some houses west of the point we came out as the five-mile radius in the town of Emma." J. C. Woody testified to houses in the town of Emma and east of the courthouse, but fails to show whether the houses are within or without the five-mile radius. The deed of dedication clearly indicates there was a town on the section before the grantor executed it. If this section was platted longer than one day before the election, the evidence does not show it. There is no testimony to show that the voters intended to vote for the platted section, unless the filing of the plat the day before is such. We think there is evidence which will support the judgment of the trial court. At least, we are not prepared to say there is none.

[4] It has been urged by appellants that from the situation of the houses the town of Emma in 1910 cannot be presumed where thus situated in 1891. This is true. The presumption will not prevail retrospectively, but the situation in 1910 was a circumstance which can be looked to for what it is worth. It does not rise to the dignity of a presumption, but it is nevertheless a fact or circumstance which may be entitled to some consideration. The fact that voters in 1891, when they cast their ballot for a section of land, said section 1, certificate 336, when they voted for a town they named Estacado or Emma, as the case might be, indicates that, if they had been voting for section 2, they probably would have so stated.

[5] It is earnestly contended by counsel for contestants the phrase, "whereas a town has been built upon said section," in the deed from Benedict, cannot and should not be considered as testimony on the question as to whether there was a town known as Emma on the section. It is urged that such recital is not evidence against third persons who are strangers to the deed. This proposition is true and sustained by the authorities cited by contestants. But are contestants strangers to the deed they offered in evidence themselves to sustain their case? Benedict, by his deed, recited, "I do hereby donate unto the said citizens of the aforesaid town, the free and uninterrupted use of said streets and alleys," and he further does so "for and in consideration of the fact that a town has been built upon said section of land and for the purpose of securing the inhabitants of said town in the enjoyment of its streets, alleys and square." That was the consideration or reason for platting the section. That is, because a town was on it, and to secure the inhabitants in the enjoyment of such streets.

[6] Recitals in the deed are prima facie evidence of such consideration. Haldeman

v. Chambers, 19 Tex. 1; Sachse v. Loeb, 69 S. W. 460; Williams v. Talbot, 27 Tex. 159. This was a dedication deed; otherwise it might be held invalid because it was uncertain as to who were the grantees. It was evidently the purpose of Benedict to deed to the public the right to the streets and alleys, and he was moved thereto because he found a town on his section to secure the inhabitants thereof in the use of the streets, etc.; they were dedicated to their enjoyment. City of Corsicana v. Zorn, 97 Tex. 317, 78 S. W. 924. Judge Brown of the Supreme Court said in that case: "The fact of the deed from Mrs. Zorn and her husband to the different purchasers of lots in Zorn's addition was to convey to such purchasers the right that they and all persons should be permitted to use the streets and alleys for the purposes designated upon the said plat for all time, and this conveyance vested in the public and in the city of Corsicana, as the organized representative of the public, the right to take possession of and use said streets and alleys whenever the progress and development of the town should make it necessary so to do. It is objected on the part of Mrs. Zorn that there has been no acceptance by the city of the dedication. There was no necessity for such an acceptance, for the right which vested in the purchasers of the different lots, and through them in the public, was irrevocable." Also, see Sanborn v. City of Amarillo, 42 Tex. Civ. App. 115, 93 S. W. 473. If this deed was to the public, every citizen in Emma and the county, while it was the county seat, held in privity whether accepted formally or not, and enjoyed certain rights in said town by virtue of said deed of which they could not be deprived. This suit is by citizens of Crosby county in behalf of the public to retain the county seat at Emma, and as evidence of the fact they introduced this deed and invoked the stipulation in the deed which is in their interest.

[7] The fact that there is recited in the deed that a town existed on the land before the deed is called a hearsay declaration, which is not evidence, so say contestants. The deed is to a town for the enjoyment of a town and its inhabitants and to make a town. If one part is admissible, why not all of it? These parties, contestants and contestee, stand in the same relation to the deed. If one part is to be treated as an unsworn declaration by a stranger, then it is so as to all of it. Complainants themselves introduced the deed and did not restrict it, or ask the trial court to do so, but now insist in this court that it was not and is not evidence as to the existence of a town on the land before the plat. We have concluded it is, and especially since contestants themselves put it in evidence without any restrictions or limitations. The trial court, according to our view, had testimony that there was a town on that section in 1891, and that it was in-

habited. The evidence does not disclose its boundaries at that time, but the testimony does show in 1910 the location of some houses at that time, none of which were proven to be within the five-mile radius, and such fact was a circumstance, though slight, upon which to base a judgment, in the absence of proof to the contrary. The record in this case is silent as to any intention on the part of the voters to vote for a town plat as the county seat in 1891. Such intention could be established only by inference. The trial court, from the evidence before him, drew the inference that the voters at the time intended to vote for the town of Emma as then known at a place more than five miles from the geographical center of the county, and that the county seat was then located at that point. On the evidence before that court we cannot say the trial judge erred in such conclusion, and, not being able to say so, it becomes our duty to affirm him upon that point.

There are a number of assignments to the action of the court in sustaining exceptions to contestants' amended petition; but in the disposition we shall make of the case, in our opinion, they become immaterial, and are therefore overruled. The opinion of the Supreme Court disposes of several of the assignments.

[8] The twelfth assignment complains of the action of the court in striking out the twenty-third paragraph of the first amended petition, in which it was alleged that 35 votes were cast at the voting box of Estacado, 30 for Crosbyton and 5 for Emma, and in which it was alleged that the votes so cast were illegal and should not have been counted, for the reason that each of said voters voted outside of the election precinct in which they resided. The names of the parties so voting were given in the petition. The court, during the trial, heard evidence on the question raised by the pleading so stricken out and filed conclusions of facts thereon. We hold that, even though the court may have been in error in striking out that portion of the petition, it became immaterial or harmless error; he having heard evidence introduced by both sides. Harle v. Texas Southern Co., 39 Tex. Civ. App. 43, 86 S. W. 1048; McClenny v. Floyd, 10 Tex. 159.

[9] The court found as a fact that the west boundary line was not where contestants claimed it, and in the eighth finding of facts states "that the voting place of Estacado is not shown by the evidence to have been west of the west line of Crosby county." There is testimony in the record supporting this finding. It is also shown by the testimony that the people in that precinct have been voting at the schoolhouse where the election was held September 17, 1910. There is no testimony that any voter was deprived of his vote, or that there was any unfairness by any one in holding the election at that place. Ex parte White (Cr. App.) 28 S. W. 542; Am. & Eng. Enc. vol. 10, p. 597; Quinn v. Lattimore, 120 N. C. 426, 26 S. E. 638, 58 Am. St. Rep. 797. In the North Carolina case the court said: "When qualified voters living near the dividing line of two townships, which line was not definitely located, in good faith registered and voted in the township in which they did not actually reside, but it appeared they had listed their property for taxation, sent their children to school for many years previous, had registered and voted in the same township, it was held the votes of such electors having been cast must be counted." In the White Case, above cited, it is stated: "The object of a provision of this character is to insure a fair and honest election by requiring each voter to cast his ballot at the same place where his neighbors voted and those to whom his qualifications were best known and by whom if necessary they could be challenged." From the record, it appears that the west boundary line of Crosby county was in dispute and had been for years. Its true location was difficult of ascertainment; different surveyors running different lines. The voting box at Estacado appears to be situated on the disputed strip, and until this controversy no question as to the right of the voters in that precinct to cast their ballots at that box had been questioned. The record does not show that any one living outside of that precinct cast his ballot at the election held September 17, 1910, or that any one living therein was deprived of his vote on account of the box being so situated. We do not believe the spirit of the Constitution has been violated by counting the votes so cast. It would be a harsh rule that would disfranchise a whole community because of an honest mistake or because surveyors could not agree as to the true line. We therefore overrule all assignments, whether as to pleading, exception, court's finding, or the like, bringing into question the legality of the votes so cast.

Contestants in this case object to some 70 voters because of improper conduct and influence being brought to bear on them to secure their votes in favor of Crosbyton. They set up substantially the following grounds for attacking said votes: "That in precinct No. 1 there were permitted to vote at the election 21 persons named in the pleading who voted in favor of the removal of the county seat to Crosbyton, and whose votes were counted in declaring the result of the election. That each of said 21 votes were illegal for the reason that prior to the election the C. B. Live Stock Company, a foreign corporation doing business in Crosby county, its agents and employés, for the purpose of inducing such voters to vote in favor of the removal of the county seat from Emma to Crosbyton, contracted with each of such

voters to give and donate to each of such voters certain town lots in the town of Crosbyton in consideration of their voting in favor of Crosbyton for the county seat. That each of such voters accepted such contracts and donations and were induced thereby to vote for Crosbyton. That after entering into such contracts, said live stock company, its agents and employés, organized a town-site company and conveyed the town site of Crosbyton to such town-site company, and the town-site company agreed with the live stock company to carry out the illegal contract of said live stock company with the 21 voters named in the pleading. That the live stock company further agreed with such voters to remove at its own expense all the houses, barns, and other improvements of the voters from Emma to Crosbyton. That each of such voters was influenced by such promises and contracts to vote, and did vote, in favor of the removal of the county seat from Emma to Crosbyton, and that each of such votes was therefore illegal." And also attack the votes of some 70 voters in all, including No. 1 and seven other voting precincts, on the same allegation substantially as above set out.

In appellants' thirty-second assignment of error it is complained that the court erred in his ninth finding of facts, to the effect that neither the C. B. Live Stock Company nor any of its agents offered any inducement or made any propositions looking to having as their object and purpose the giving to any voter or voters any financial consideration or aid for their votes for the removal of such county seat from Emma to Crosbyton or from Ralls, for the reason that the evidence adduced upon the trial clearly shows that between the time the election was ordered on the 8th day of August, 1910, and the day on which the same was held, on the 17th day of September, 1910, the C. B. Live Stock Company, through its duly authorized agents, did hold out to the voters of Crosby county inducements and representations looking to and having as their object the purpose of giving to such voters financial aid and consideration for their votes. Then the same question is raised by various other assignments, and in the sixty-fourth assignment appellants make the assignment that the court erred in holding and concluding that the vote of each of the following voters was a legal vote, and set out some 70 names, for the reason that the pleadings and evidence conclusively show that said witnesses were unlawfully influenced in their determination to vote for Crosbyton against Emma, by the acceptance of each of said voters of the unlawful proposition and offer of the C. B. Live Stock Company, whereby each of said voters

acquired a property interest in the town of Crosbyton, prior to the election and after the same had been ordered.

Under the sixty-fourth assignment, contestants present seven propositions setting out, in part, the testimony of each of the voters whose votes were claimed to have been illegal. The court's ninth finding of fact was as follows: "I find that neither the C. B. Live Stock Company nor any of its agents offered any inducements or made any propositions looking to and having as their object and purpose the giving to any voters or voter any financial consideration or aid for their votes for the removal of such county seat from Emma to Crosbyton, or to Ralls, and that no voters were bribed or intended to be bribed, but that the exchange of lots between the citizens of Crosby county and the manager of the town site of Crosbyton was for business considerations and without regard to the question of the county seat, and that the donation of lots for building purposes was made to the citizens of Crosby county generally, and not for the purpose of influencing voters, and that as a matter of fact no votes were influenced thereby. That there has been shown by the evidence no illegal votes to have been cast at said election in favor of either town. That on the whole evidence of Sam H. Botts it appears and is found here by the court that he was not an illegal voter and was offered and accepted no consideration for his vote; and the same is here found as to the voter Hugh Metcalfe." There is a great deal of testimony in the record with reference to the propositions and contracts by the C. B. Live Stock Company which we deem it unnecessary to set out at any length, as it would render this already too lengthy opinion cumbersome. We believe it is sufficient to state that there is sufficient evidence in the record to sustain the court's findings of fact as to those several parties set out in the assignment, and for that reason overrule said assignment and all others pertaining to the same question raised thereby.

All other assignments made in this case are overruled as having been disposed of in this opinion and that of the Supreme Court.

[10] Should the votes which it is claimed were unduly influenced be thrown out, it would not change the result of the election, as there would still be left a majority in favor of Crosbyton, and, if the court was in error in his finding of fact on this point, it could not and would not change the result of the election in our opinion.

We therefore conclude that a rehearing should be ordered, and the judgment of the court below in all things affirmed, and it is so ordered.