ANDERSON et al. v. SMITH.    (No. 1175.)

(Court of Civil Appeals of Texas. El Paso. April 14, 1921. Rehearing Denied June 2, 1921.)

**1. Appeal and error ⟾931(1)—Viewed in aspect most favorable to appellee.**

Evidence must be viewed in its aspect most favorable to appellee.

**2. Statutes ⟾117(8) — Amendatory statute making natural person liable for death caused by agent, invalid.**

Acts 33d Leg. (1913) c. 143 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4694), amending Rev. St. 1911, art. 4694, is invalid in so far as it undertakes to make a natural person liable in damages for a wrongful death caused by his agent or servant; the change not being

within the scope of the caption of the amending act.

**3. Death ⟾33—Joint tort-feasors liable.**

Liability for wrongful death under Rev. St. 1911, art. 4694, is not limited to person whose hand inflicted the death wound, but extends to his joint tort-feasor.

**4. Torts ⟾22—Joint tort-feasors jointly and severally liable.**

Joint tort-feasors are jointly and severally responsible for the consequences of their wrongful act.

**5. Torts ⟾22—"Joint tort-feasors" defined.**

When two or more persons participate in concerted action to commit a common tort and accomplish their purpose, they become "tort-feasors."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Joint Tort-Feasors.]

**6. Death ⟾75—Evidence held to show concerted killing.**

In an action against father and son for death of plaintiff's husband shot by son, evidence *held* to show concerted action between father and son to wrongfully kill the husband.

**7. Death ⟾33—Father held liable as "joint tort-feasor" with son who shot deceased.**

Where son shot deceased after there had been concerted action between father and son to wrongfully kill deceased, the father was a "joint tort-feasor" and was equally liable in damages for decedent's death under Rev. St. 1911, art. 4694.

Appeal from District Court, Jones County; W. R. Chapman, Judge.

Suit by Mrs. E. O. Smith against F. W. Anderson and another. Judgment for plaintiff, and defendants appeal. Affirmed.

W. S. Pope, of Anson, and Stinson, Chambers & Brooks, of Abilene, for appellants.

Jno. B. Thomas, of Anson, and Joe C. Randel, of Hamlin, for appellee.

HIGGINS, J. This suit was brought by the appellee for herself and as next friend of her minor children against appellants, F. W. Anderson and his son, Ray Anderson, to recover damages for the wrongful killing of Otto Smith, her husband and the father of her children. The case was tried without a jury and judgment rendered in favor of plaintiff against both defendants, jointly and severally, for the sum of $8,000. Findings of fact and conclusions of law were not filed by the trial court. Both defendants appeal, but no assignment of error is presented questioning the correctness of the judgment against Ray Anderson. All of the assignments relate to the judgment against F. W. Anderson.

---

⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

There is evidence to the following effect:
The deceased, Otto Smith, was a tenant upon the farm of F. W. Anderson. On Friday afternoon, August 2, 1918, the deceased was in his field cutting cane. His brother, Will Smith, was present. F. W. Anderson came into the field where they were at work, and a quarrel arose between Anderson and deceased. No blows passed, however. The Smiths resumed their work, and Anderson left, saying to the deceased: "Ha, Ha, this ain't settled yet! I'll get you!"

The next morning deceased, his brother, Will Smith, and a cousin, Tom Smith, started to town in an open-top one-seated buggy. The public road leading to town passed the home of F. W. Anderson. As they approached the Anderson home and got in about 200 yards thereof, F. W. and Ray Anderson appeared in the road; the latter armed with a gun and the former carrying a club. F. W. Anderson stood in the middle of the road, and Ray Anderson over next to the fence. The Smiths stopped and turned back. As they did so, deceased said to the Andersons: "If that's your game, we'll go back." To which F. W. Anderson replied: "I'll get you sons a bitches," or, "You sons a bitches, we'll get you," and the deceased said, "Look out, old man, I know too much on you." The Smiths went back home, and thence to town by another road avoiding the Anderson home. The Smiths remained in town until afternoon, when they started back to the home of Otto Smith. While in town, Will and Tom Smith saw F. W. Anderson, and he saw them. Going back home, the Smiths traveled the direct public road which led by the Anderson home. They first went to the home of John Smith, where the deceased procured a loaded shotgun. From the home of John Smith they continued their journey, deceased carrying the shotgun with them. They passed the home of Anderson and came to the home of John Gooding, which was on the public road and between the Anderson and Otto Smith homes. The road at Gooding's house was in a lane. The Smiths stopped their buggy in the lane in front of the Gooding house. The buggy did not stop in the middle of the lane, but was drawn over next to the wire fence between the road and the house. All three remained in the buggy seated on its one seat. Gooding came out and approached the buggy, and the four engaged in conversation. When they had been thus engaged for a few minutes, an automobile was seen approaching at a rapid speed down the public road, coming in the direction of the Gooding house, Anderson's house, and town. As it neared the party, the Smiths recognized the occupants of the car as F. W. and Ray Anderson. F. W. Anderson was driving. The car passed the Smiths at a rapid rate and continued on its way. As the car passed the Smiths, Ray Anderson, without warning and without justification, suddenly raised a gun and fired at the Smiths, wounding Otto Smith so severely that he died in a few minutes. Will Smith testified:

"About the time they passed the buggy, Ray just come over with the gun and shot. The car looked to be about even with the buggy at that time, almost even with the buggy. He just come over with the gun and shot when he passed. We were on the west side of the road. Looked like the car was in three or four or five feet of the buggy. It looked like he pulled in towards us; I couldn't say that he did, but it looked that way."

[1] We do not undertake to detail all of the evidence. It must be viewed in its aspect most favorable to the appellee, and the statement made is from that viewpoint.

[2] Under the first assignment it is asserted that the judgment against F. W. Anderson is unsupported by the evidence because the death of Otto Smith was caused by the wrongful act of Ray Anderson, who fired the fatal shot, and it is not shown that in so doing Ray Anderson acted as the agent or servant of F. W. Anderson. If the judgment were dependent upon the establishment of such a relationship, it could not be sustained in view of the recent ruling in Rodgers v. Tobias, 225 S. W. 804, and in which a writ of error has been refused. In that case it was held that the amendment of 1913 (Acts 33d Leg. Reg. Sess. p. 288 [Vernon's Sayles' Ann. Civ. St. 1914, art. 4694]) to section 2 of article 4694, R. S., is invalid in so far as it undertakes to make a natural person liable in damages for a wrongful death caused by his agent or servant; the ruling being predicated upon the fact that such a change in the law was not within the scope of the caption to the amending act.

In view of this ruling, the law remains as it was before the amendment. Article 4694, R. S. 1911, provides that—

"An action for actual damages on account of injuries, causing the death of any person may be brought in the following cases: * * * (2) When the death of any person is caused by the wrongful act, negligence, unskillfulness, or default of another."

Our statutes upon the subject are based upon Lord Campbell's Act passed in England in 1846. The English act was speedily followed in this country by the passage of laws in the several states having in view the same general purpose. Though these laws have been in effect for many years, there seem to be very few decisions involving the right of recovery for death intentionally and wrongfully inflicted against one whose own immediate act was not the cause of the death.

[3] In the instant case the fatal shot was fired by Ray Anderson. It was his immediate act that caused the death of Otto Smith. But in our opinion liability under the statute is not necessarily limited to the one whose hand inflicted the death wound.

[4] It is a familiar rule that joint tortfeasors are jointly and severally responsible for the consequences of their wrongful act.

"Wrongs may be committed either by one person or by several. When several participate, they may do so in different ways, at different times, and in very unequal proportions. One may plan, another may procure the men to execute, others may be the actual instruments in accomplishing the mischief, but the legal blame will rest upon all as joint actors." 1 Cooley on Torts (3d Ed.) 213.

[5] So when two or more persons participate in concerted action to commit a common tort and accomplish their purpose, they become joint tort-feasors. Wolf v. Perryman, 82 Tex. 112, 17 S. W. 772.

[6, 7] In our opinion the evidence is sufficient to show concerted action between F. W. and Ray Anderson to wrongfully kill Otto Smith. If this view of the evidence be correct, F. W. Anderson became a joint tortfeasor and equally liable in damages under the statute with Ray Anderson, who fired the shot which caused Smith's death. McCue v. Klein, 60 Tex. 168, 48 Am. Rep. 260; Gray v. McDonald, 104 Mo. 303, 16 S. W. 398; Benson v. Ross, 143 Mich. 452, 106 N. W. 1120, 114 A. S. R. 675.

Briefly, the facts which show concert of action between the Andersons are: The threat made by F. W. Anderson against deceased the afternoon preceding the killing; the action of the Andersons on the morning of the killing when they confronted the Smiths in the road both armed and with the evident common purpose at that time of committing an assault with a deadly weapon; the threat then made by F. W. Anderson; direct and active participation by F. W. Anderson as the driver of the car in which Ray Anderson rode to the scene of the homicide and which rapidly carried him away and out of danger; the evidence of Will Smith to the effect that as the car passed the buggy in which they were seated it seemed to have been pulled in towards them. From Smith's testimony it may be inferred that F. W. Anderson swerved the car near the buggy so that Ray Anderson might more surely shoot.

What has been said disposes of all assignments except the third which complains of rulings upon evidence. For various reasons this latter assignment is regarded as presenting no error; in any event, no error sufficient to require a reversal.

Affirmed.