## HINES v. KANSAS CITY LIFE INS. CO.* (No. 50.)

(Court of Civil Appeals of Texas. Waco. Feb. 28, 1924. Rehearing Denied March 27, 1924.)

1. **Insurance** ⟞665(2)—**Evidence held to warrant finding insured not in good health at time of alleged constructive delivery of policy.**

In an action on a life policy, evidence as to whether applicant was in good health at the time of the alleged constructive delivery of the policy *held* to present an issue of fact for the jury, and a finding that he was not in good health at that time was warranted.

2. **Appeal and error** ⟞931(3)—**On appeal from general finding every issuable fact considered found in favor of appellee.**

On appeal from a general finding, every issuable fact must be considered found in favor of appellee, if there is any evidence to support such finding.

3. **Appeal and error** ⟞931(1)—**On appeal from general finding, evidence read in light most favorable to finding.**

On appeal from a general finding, evidence must be read in a light most favorable to each finding which would have been necessary to support the general finding, rejecting all evidence favorable to the opposite contention, and considering only the facts and circumstances tending to sustain the finding.

4. **Insurance** ⟞136(4)—**"Good health" defined.**

The term "good health," as used in an application for a life policy, making the contract void, unless the policy is delivered to applicant while in good health, does not mean absolute perfection, but means that applicant has no serious disease, and mere temporary indisposition which does not tend to weaken or undermine the constitution, existing at the time of receiving the policy, is not a breach of the requirement.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Good Health.]

5. **Insurance** ⟞668(3)—**Whether insured in good health when policy delivered held question of fact.**

Whether applicant was in "good health" at the time of the delivery of a life policy within the meaning of the application, making the contract void unless policy is delivered to applicant when he is in good health, is ordinarily a question of fact.

6. **Insurance** ⟞136(4)—**Mailing of policy to agent held not constructive delivery to insured.**

Where a policy, conditioned on delivery during applicant's good health, was mailed to the company's agent, whose duty it was not to deliver the policy if applicant's health had become impaired, and agent had agreed to deliver the policy to a bank on payment of the premium, and applicant, several days before the mailing of the policy to the agent, became ill and died before its receipt by agent, who refused to deliver it, there was no constructive delivery of the policy.

7. **Insurance** ⟞92—**Evidence held to warrant finding agent had no authority to deliver after applicant's death.**

In an action on a life policy, evidence *held* sufficient to warrant finding that the premium was not to be paid until a manual delivery of the policy by company's agent, and that agent, knowing of applicant's death, was without authority to deliver the policy, and that he merely discharged his duty to the company in refusing to deliver it.

8. **Insurance** ⟞136(1)—**Company not liable where policy not delivered.**

Where there was no actual or constructive delivery of a life policy, insurance company never became liable thereon.

Appeal from District Court, Madison County; Carl T. Harper, Judge.

---

⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction May 14, 1924.

Action by Armenta Hines against the Kansas City Life Insurance Company. Judgment for defendant, and plaintiff appeals. Affirmed.

S. W. Dean, of Navasota, and J. M. Brownlee, of Madisonville, for appellant.

Cockrell, McBride & O'Connell, of Dallas, for appellee.

GALLAGHER, C. J. Mrs. Armenta Hines, appellant herein, sued the Kansas City Life Insurance Company, appellee herein, to recover the sum of $5,000, the amount stipulated to be paid by appellee to the estate of her deceased husband, John W. Hines, by the terms of a certain policy of insurance on his life in the event he died while such policy was in force. She also sued for interest, penalty and attorney's fees, as provided by statute for a failure on the part of a life insurance company to pay a loss under one of its policies after legal 'demand therefor. Appellee denied liability on said policy. There was a trial before the court, which resulted in judgment in favor of appellee. Appellant has presented said judgment, together with the proceedings resulting in the same, to this court for review.

She sued as executrix of the will of the insured and as sole legatee thereunder. There are no findings of fact incorporated in the judgment. There are no findings of fact nor conclusions of law found in the record; neither does the record disclose a request therefor.

The application made by the insured upon which the policy sued on was issued contained, among other provisions, the following:

"That it is expressly agreed to and understood upon my part that this contract is to be null and void and of no binding force whatever, unless my application is received and accepted at the home office of the company and approved by the medical examiner, and the policy of insurance is delivered to me or my beneficiary during my lifetime and while I am in good health."

This application was taken by R. M. Conner, local agent for appellee in Madison county. It contains a statement, signed by said agent, which, so far as the same concerns the payment of premium, is as follows: "Amount collected: Cash $———; note $———; total $ C. O. D." Said application also contained the following direction: "If policy is issued, send it to R. M. Conner at Madisonville, Texas." The insured submitted to medical examination as required, and said application, together with the report of the physician making such examination, was forwarded to the office of appellee's state manager at Dallas, and received there on February 27, 1920. It was promptly mailed from there to the home office of appellee in Kansas City, Mo., where it was

duly considered and approved on March 4, 1920. The policy sued on was written in pursuance of such application on March 6, 1920, but bore the same date as the approval of the application. It was duly registered by the insurance department of the state of Missouri on March 8, 1920. It was then sent to the office of appellee's state manager at Dallas, from whence it was on March 10th mailed to R. M. Conner at Madisonville, where it should have arrived some time in the afternoon of March 11th. It was actually received by Conner, who lived on a rural route out of Madisonville, on March 13, 1920. Said policy contained, among other provisions, the following:

"(1) This policy shall not take effect unless the first premium hereon has been paid and this policy delivered to the applicant within thirty days from the date hereof, or unless the applicant is in good health at the time of its delivery."

"(8) No agent, has power on behalf of the company to modify this contract, to extend the time of payment of premiums, to waive any forfeiture, to bind the company by making any promise or any representation, or to deliver any policy, contrary to the provisions of section one (1) hereof. These powers can be exercised only by the president, vice president, secretary or assistant secretary of the company, and will not be delegated. * * *"

"This policy is issued in consideration of the stipulations, agreements and representations made in the application for this policy, a copy of which application is hereto attached and made a part hereof, and said policy and application constitute the entire contract between the parties hereto."

The insured, John W. Hines, did not pay the annual premium to the agent at the time he signed and delivered said application. The agreement between him and Conner concerning the payment of the premium and delivery of the policy, if issued, was, according to appellant's testimony, as follows:

"Mr. Conner agreed to deliver the policy and receive his premium at the Farmers' State Bank. As far as I can remember, Mr. Conner seemed to think it would be perfectly all right. He was to leave the policy at the bank and receive the money for the premium at the bank. The agreement was that he was to leave the policy at the bank for Mr. Hines and get his money at the bank. Mr. Hines was to make arrangements for him to get the money there. Yes, sir; he made such an arrangement. Yes, sir; I know that the money was there for him, and the money has been there since that time for him, and it is there yet. It is there for them now if they will accept."

Such agreement, according to Conner's testimony, was as follows:

"In taking the application from Mr. Hines, I wrote out the contract in regular form and had only one understanding with reference to the premium, and that agreement was that Mr. Hines was to come down and arrange with the officers here at the bank to pay me the pre-

mium on the policy when the policy was delivered, and I was to deliver the policy here to the bank, and they were to pay for it. The agreement between me and Mr. Hines was that I was to receive the policy for Mr. Hines, and the policy was to be sent to me, and I agreed to turn it over to the bank for Mr. Hines, and I wrote. on the application that it was to be sent direct to me."

[1] The insured was in good health at the time of said application and medical examination. According to appellant's testimony, he took sick with influenza, commonly called "flu," on the 26th or 27th day of February and called his family physician. She further testified that the insured got over the flu and was better and could sit up, and that his physician had dismissed the case; that he was up and about the place from about the 4th to the 6th day of March, inclusive; that on March 6th or 7th he had a chill and fever and developed pneumonia, and died about noon on March 11. She denied that the physician called every day from the time insured took sick, but testified that he stopped in nearly every day as he passed by.

The attending physician testified that when he was first called, about February 29th, he found the insured suffering from cold, pleuritic pains, and fever, and diagnosed the case as influenza; that the usual symptoms of a mild case of flu continued until about the 5th or 6th day, when temperature became normal and so remained until about the 7th or 8th day, when pneumonia developed; that insured died about March 11, 1920; that the immediate cause of death was progressive heart weakness, and that pneumonia, which the patient had had for about three or four days before his death, was the contributing cause; that he made the patient about twelve visits in all. This witness does not testify that he discharged the patient at any time, but treats the time from his first visit to the death of the patient as one continuous period, indicating the different stages by counting the days from his first visit.

Another physician testified that he was called in consultation with the physician attending the insured on or about March 6th, and found him just recovering from influenza and in a very nervous state; that he suspected that insured might develop pneumonia; that in his opinion the death of the insured resulted from after effects of influenza, finally developing into pneumonia.

There were no special instructions given with reference to the delivery of this policy, but the general instructions given by the company to its agents, including Conner, were printed in its rate book, and were as follows:

"Should the health of the applicant become impaired, or anything else come to the knowledge of the agent making the risk undesirable, after the application is written and before actual delivery of the policy, the agent must notify the company of the facts and immediately return the policy to the home office."

The agent Conner, on receipt of the policy, took it to the bank, as he agreed with insured to do, but, because the insured was then dead, he refused to leave it or to accept the amount of the premium which the bank had instructions to pay him on receipt of the policy. Later he returned the policy to the company.

Appellant does not deny that the insured was ill from February 26th or 27th until about March 3d, inclusive, nor that he was seized with the attack of pneumonia which resulted in his death, not later than March 7th, but she contends he was in good health from March 4th to March 6th, inclusive. She further contends that, under the agreement above stated, Conner was the agent of the insured to receive the policy and to deliver it to the bank. She further contends that under the facts recited the contract of insurance was completed and became binding on the company when the application was approved, and that there was a constructive delivery of the policy when the company placed the same in the mail at Kansas City to be transmitted to its Texas office, and from thence to Conner at Madisonville, and that all the same occurred during the time she claims the insured was in good health.

[2, 3] The finding of the court in favor of appellee being general, every issuable fact must be considered found in its favor if there is any evidence to support such a finding. In passing upon the sufficiency of the evidence to sustain each such finding, we must view the same in the light most favorable thereto, rejecting all evidence favorable to the opposite contention, and considering only the facts and circumstances which tend to sustain such finding. San Antonio Irrigation Co. v. Deutschmann, 102 Tex. 201, 205, 105 S. ,W. 486, 114 S. W. 1174; Cartwright v. Canode, 106 Tex. 502, 507, 171 S. W. 696; Railway v. Landa (Tex. Civ. App) 149 S. W. 292, 294; Ralls v. Parrish (Tex. Civ. App.) 151 S. W. 1089, 1090; Tobin v. Benson (Tex. Civ. App.) 152 S. W. 642, 643 (writ refused); Telegraph Co. v. Glenn (Tex. Civ. App.) 156 S. W. 1116, 1118 (writ refused); Cornelius v. Harris (Tex. Civ. App.) 163 S. W. 346, 349 (writ refused); Blome Co. v. Herd (Tex. Civ. App.) 185 S. W. 53, 60 (writ refused); Clemenger v. Flesher (Tex. Civ. App.) 185 S. W. 304, 306 (writ refused); Anderson v. Smith (Tex. Civ. App.) 231 S. W. 142, 143 (writ refused).

[4, 5] Was the insured, on March 4th to 6th, inclusive, in good health within the meaning of that term as used in the application and policy under consideration? "Good health," when so used, does not mean absolute perfection, but is comparative. It means that the insured has no grave, important, or serious disease, and is free from any ailment

that seriously affects the general soundness or healthfulness of the system, and mere temporary indisposition which does not tend to weaken or undermine the constitution, though existing at the time of making the application or at the time of receiving the policy,'will not be held a breach of such requirement. Whether the insured was in good health at the delivery of the policy is ordinarily a question of fact for the court or a jury trying the case. 3 Cooley's Briefs on Insurance, pp. 2110-2111; 3 Joyce on Insurance, § 2004; Mutual Reserve Fund Life Ass'n v. Bozeman, 21 Tex. Civ. App. 490, 52 S. W. 94; Woodmen of the World v. Locklin, 28 Tex. Civ. App. 486, 67 S. W. 331, 336, 337; Denton v. Kansas City Life Ins. Co. (Tex. Civ. App.) 231 S. W. 436, 440; Life Assurance Society v. Reutlinger, 58 Ark. 528, 25 S. W. 835, 837–839; Barnes v. Life Association, 191 Pa. 618, 43 Atl. 341, 45 L. R. A. 264; Roe v. National Life Ass'n, 137 Iowa, 696, 115 N. W. 500, 17 L. R. A. (N. S.) 1144, and note, 1145; Plumb v. Penn Mutual Life Ins. Co., 108 Mich. 94, 65 N. W. 611; Packard v. Metropolitan Ins. Co., 72 N. H. 1, 54 Atl. 287; Metropolitan Life Ins. Co. v. Howle, 62 Ohio St. 204, 56 N. E. 908; Woodmen of the World v. Jackson, 57 Okl. 318, 157 Pac. 92, 95, L. R. A. 1916F, 166.

We have set out the substance of the evidence on the condition of insured's health during said days during which appellant claims a constructive delivery of the policy took place. We think that the same presents an issue of fact for the determination of the trial court. When such evidence is viewed in the light most favorable to the judgment, as we are required to view it, we cannot say that a finding by the trial court against the contention of appellant on this issue is without support therein.

[6, 7] Was there a constructive delivery of the policy within such time? Appellant on this issue cites and relies on the case of Life Association v. Harris, 94 Tex. 25, 57 S. W. 635, 86 Am. St. Rep. 813. The application for the policy under consideration in that case and the policy afterwards issued thereon contained provisions similar to those in the application and policy in this case. The real issue in that case, however, was when and where the contract of insurance was completed and became binding on the association. If it was completed in the state in which the policy was issued and mailed to Texas for delivery, the terms and provisions of such policy were to be construed under the laws of that state. If the contract of insurance was not completed until the actual manual delivery of the policy to the insured or to some one authorized to receive the same for him, then the laws of Texas should control the construction of its terms and provisions because such manual delivery occurred in this state. The discussion of the provisions of the

application and policy above referred to was in that case incidental to such main issue. There was no contention that the insured was not in good health when the policy was actually received by him. The issue under discussion was the force and effect to be given to the recital in the application of certain facts and conditions existing prior to the signing of the same. In that case the premium was paid in advance to the agent at the time the application was taken. Nothinge remained for the insured to do. No examination of his condition of health at the time of delivery was provided for or required. If the insured had been at the home office of the company when his policy was written, there is nothing in the opinion in that case to show why the association would not have then and there delivered the policy to him in person. Under that state of facts, the court held that transmitting the policy to the agent of the association in Texas for unconditional delivery was a constructive delivery to the insured at the time it was placed in the mail. That case, however, recognizes that other conditions may in other cases exist, and that something may be required of the insured before he is entitled to receive the policy, or that the agent of the company, who is to make actual manual delivery to the insured, may be properly charged with some duty with reference to ascertaining the state of the health of the insured, and some discretion or duty to withhold delivery if the health of the insured has been or is at the time impaired, and that in such cases the contract will not become complete until the insured has done what he was under obligation to do before receiving the policy, or until the agent, acting within the scope of his authority, has either actually delivered the policy, or has waived further requirements and has offered or stands ready to deliver the policy. We think the above is a correct statement of the force and effect of the decision of the Supreme Court in that case, and in support of this conclusion we quote the following from page 36 of the opinion (57 S. W. 639) in that case:

"The character of the risk to be assumed in this case was passed upon in accepting the application, and, as the premium had then been paid and accepted, there was nothing to prevent the immediate conclusion of the contract subject to the other condition, that the applicant should be at the date of the policy alive and in good health. Story on Conflict of Laws, § 279a; Schwartz v. Insurance Co., 18 Minn. 448. The general rule is that the acceptance of the application and the issuance and mailing of the policy are all the acts that are essential to put the contract in force, and the fact that the policy is sent to an agent for unconditional delivery does not alter the effect of the transaction. Shattuck v. Insurance Co., 4 Cliff. C. C. 598. It does not appear that the agent to whom this policy was sent was to ascertain the condition of Harris' health or that he had any

discretion to hold it in any event, and this distinguishes the case from that of Equitable Life Assurance Society v. Pettus, 140 United States, 226, in which the premium was to be collected by the local agent before the policy took effect. That case and others relied on by plaintiff in error are further distinguishable from this upon another ground which will be stated further on.

"In Schwartz v. Insurance Company, supra, the policy containing the same provision as that under consideration was sent by the company to its agent in Minnesota for delivery upon payment of first premium while applicant was alive and in good health, and the agent refused to deliver it because the applicant was sick. It was held that if the agent was authorized by instruction to withhold the policy because of such sickness, the contract did not take effect; but that if it was sent for delivery upon payment of premium with no authority in the agent to retain it because of applicant's condition, the contract became effective upon tender of premium. It necessarily follows that if the premium has been paid when the policy issues, such a provision as this does not hinder its immediate operation."

Appellant also cites and relies on the case of Amarillo National Life Ins. Co. v. Brown (Tex. Civ. App.) 166 S. W. 658, in which case writ of error was refused by the Supreme Court. In that case the insured at the time he signed the application paid the premium required by a note, maturing some time the following fall. This note was accepted by the agent as cash, and such an acceptance was within the scope of his authority. Deliveries were within the discretion of the agent, and it does not appear that any instructions to the agent, either specific or general, were involved in that case. The company in that case declined to issue the exact policy applied for, which was called a 15-year endowment policy, but it did issue and tender a 10-year endowment policy, which conformed to the application in every respect except as to date of maturity and the annual premium required. It sent this policy to the agent, together with a new application to be signed by the insured. This application was the same as the original on file except as to the two matters involved in the change of form of policy. The matter of collecting the additional premium was left to the agent. The insured resided some distance from the office of the agent. When the policy arrived the agent called him by telephone and explained the change in the policy. The insured agreed to the change and agreed to accept the policy and pay the increased premium, and asked the agent to hold the policy for him until he could come to the office of the agent and receive it. It does not appear that the insured set any definite time for the payment of the additional premium, but no demand for the setting of a definite time for payment was made by the agent, and he testified that insured, who it appears was a

man of means, could have had a year in which to make such payment if he wished it. The agent then took the policy from his office and placed the same with his private papers in a bank. The insured died shortly after this telephone conversation and before he had signed the new application and before he had ever had personal manual possession of the policy. We think the gist of that case is that the insured assented to the change in the policy, and that such assent was valid and binding on him, notwithstanding he had never signed the new or amended application, and that the agent, who had full authority and discretion to deliver the policy, would have delivered the same at the time of the telephone conversation if the insured had been at the agent's office to receive it. The court in its opinion in that case says that the act of the agent in taking the policy from the business office of the agency and placing the same among his private papers in his private box at the bank was some evidence to go to the jury on the question of delivery. The jury in that case found in favor of a constructive delivery, and the court approved the verdict and entered judgment against the company thereon.

The case of Denton v. Kansas City Life Insurance Co. (Tex. Civ. App.) 231 S. W. 436, is on the issue of constructive delivery similar to this case. In that case the premium was paid by note, and that feature was therefore eliminated. The application in that case was made on December 4, 1918, and physical examination was made the same day. The application was transmitted to the home office of the company in Kansas City, and, having been duly considered, was approved and policy issued January 2, 1919. This policy was duly registered by the insurance department of the state of Missouri on January 3, 1919, and immediately mailed to Texas for delivery. It was sent first to the office of the general agent of the company at Dallas, where it arrived on January 7, 1919. It was mailed from there to Ballinger for delivery, but, one of the local agents of the company at that place having moved to Eastland, it was forwarded to him there and by him returned by mail to another local agent of the company at Ballinger. The policy was forwarded from the Dallas office with express instructions to the local agent to ascertain whether the insured had had any attack of la grippe, Spanish influenza, or pneumonia since being examined. If it was found that the deceased had had any of said diseases the agent was required to withhold delivery and report to the company and await its further instructions. The insured took sick with influenza on January 2, 1919, which five days later developed into pneumonia. He died on the 10th day of January. The policy did not reach the local agent at Ballinger until after the death of the insured, and there was no

actual delivery of the policy at any time. The court rendered judgment for the defendant. It was held on appeal that the judgment involving a finding against the contention of constructive delivery was supported by the facts, and that the policy sued on never became binding on the company.

The answer to the question under consideration depends upon the correct application of the principles announced in the foregoing decisions to the facts in this case. On this issue, as on the preceding one, we are required to view the evidence in the light most favorable to sustain the judgment, and we have done so in the following review thereof: We think the evidence shows without material conflict that the agreement with the insured was that Conner should deliver the policy at the bank and then and there receive the stipulated premium. Not until the policy was so delivered was Conner entitled to receive the premium nor the bank authorized to pay it to him. So viewing the evidence, we think that the proper construction of Conner's signed statement in the application shows that he had received neither money nor notes for the premium, but that same was to be paid to him in full when, and only when, he delivered the policy to the bank; that no credit for premium was contemplated; that no delivery of the policy in the sense of it passing from the possession and control of the company and its agent and into the possession and control of the bank in behalf of the insured, without payment of the premium, was contemplated; that, on the contrary, the payment of the entire premium in cash on the delivery of the policy was contemplated. It is true that Conner testified that the arrangement by which the payment of the premium was to be made by the bank was satisfactory to him, and that he would have had the policy mailed directly to the insured if the insured had so requested. The fact remains that such was not the agreement actually made. and that he did agree to make an actual delivery of the policy to the bank before he should be entitled to receive the premium, and that the insured agreed that the bank should pay the premium only when the policy was actually delivered to it. While no special instructions to Conner to ascertain the condition of the health of the insured and withhold delivery in the event it had become impaired accompanied the policy, such duty was imposed by his general instructions. which did require him to withhold delivery and return the policy if he found such to be the case, and it was his duty to follow the same, and it seems he did follow the same. He received the policy two days after the death of the insured, and. while he took it to the bank and showed it to the officers thereof, he refused to leave it or to accept the premium but returned it to the company. So viewing the evidence, we think it

is sufficient to support a holding by the trial court that the premium was not to be paid until there was an actual manual delivery of the policy by Conner as agent of the company to the bank for the insured, and that such was the kind of delivery contemplated by the parties, and that the contract of insurance was not complete or binding on the company until such payment and delivery were made during the lifetime of the insured and while he was in good health, and that Conner, knowing of the death of the insured, was without authority to make delivery of the policy, and that he merely discharged his duty to the company in refusing to deliver the same. In support of the judgment it is our duty to consider that the court did so find. Life Association v. Harris, 94 Tex. 25, 35-37, 57 S. W. 635, 86 Am. St. Rep. 813; Equitable Life Assurance Society v. Pettus, 140 U. S. 226, 11 Sup. Ct. 822, 35 L. Ed. 497; Denton v. Kansas City Life Ins. Co. (Tex. Civ. App.) 231 S. W. 436.

[8] The trial court having found in effect that there was no delivery of the policy sued on in this case, either actual or constructive, appellee never became liable on the same, and judgment was properly rendered in its favor. Wright v. Federal Life Ins. Co. (Tex. Com. App.) 248 S. W. 325; Denton v. Kansas City Life Ins. Co., supra.

The judgment of the trial court is affirmed.